**NEUFELD SCHECK & BRUSTIN, LLP**
99 Hudson Street
New York, New York 10013

Tel: 212-965-9081
Fax: 212-965-9084

Peter J. Neufeld
Barry C. Scheck
Nick Brustin
Debi Cornwall

Anna Benvenutti Hoffmann
Emma Freudenberger
Sarah Crowley

Johnnie L. Cochran, Jr.
(1937-2005)

December 2, 2009

**VIA ECF & First-Class Mail**
Hon. William D. Wall, U.S.M.J., E.D.N.Y.
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722-4438

  Re: **Tankleff v. County of Suffolk, et al.,** No. 09 Civ. 1207 (JS)(WDW)

Dear Judge Wall:

  I, along with Barry Scheck, Barry Pollack and Bruce Barket, represent plaintiff Martin Tankleff in the above-captioned lawsuit. Pursuant to your Individual Rule 3(A)(I) and your request at our last conference in this matter that we raise discovery issues through letters to the court, this letter motion seeks to compel production of up to 14 boxes of documents from the New York Attorney General's Office (the "AG's Office"), which were subpoenaed on July 20, 2009, but have yet to be produced. (*See* 7/20/2009 Subpoena deuces tecum, attached as *Ex. A*.) I respectfully seek leave to present the arguments in four pages rather than three given the number of privileges at issue.

**Background**

  The subpoena at issue directed the AG's Office to produce documents generated in connection with its 2008 investigation of the murders of Seymour and Arlene Tankleff. The Attorney General was appointed by the Governor as a Special Prosecutor after the Appellate Division, Second Department, vacated the conviction of their son, Martin, based on newly discovered evidence of his innocence. *See People v. Tankleff,* 49 A.D.3d 160 (N.Y. App. Div. 2007). The Attorney General's investigation led him to move for dismissal of the indictment against Martin Tankleff; that dismissal forms the predicate for this wrongful conviction action. Upon information and belief, at this time the investigation is neither active nor ongoing, and no prosecution of any other suspect in the murders of Seymour or Arlene Tankleff is contemplated.

  Given the voluminous documents involved, we have made every effort to accommodate the AG's Office's requests for time to review the files, identify privileges and comply with the subpoena. To that end, we met with counsel for the AG's Office in person and negotiated a rolling

1

production. We understand from the AG's Office that is has approximately 24 boxes of responsive materials; to date, we have received 10 boxes, including 6 boxes of Suffolk County material in an initial production, and 4 boxes of documents generated by the AG's Office. Despite our repeated requests and assurances that we would receive non-privileged materials and a privilege log by a date certain, up to 14 more boxes of AG-generated documents still have yet to be produced, and no privilege log been provided. Given the lengthy delay with no formal response to the subpoena or privilege log explaining the failure to disclose up to 14 boxes of materials, (*see* 10/30/09 Schwartz letter, attached as *Ex. B*), we felt constrained to file the instant motion.

Based on our communications with counsel, we believe the AG's Office may attempt to invoke three privileges: a "law enforcement privilege," a "deliberative process privilege," and statutory grand jury secrecy. The AG's Office has the burden of justifying these privileges, *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988) (Weinstein, J.), yet, as set forth below, the AG's Office has not shown that any of the privileges favor withholding the balance of materials sought. Furthermore, this lawsuit "require[s] special attention to full disclosure," as Mr. Tankleff is acting as a private attorney general under Section 1983, seeking to bring to light the truth surrounding his parents' murders and Suffolk County's flawed investigation. *King*, 121 F.R.D. at 195.

## Argument

### Privileges Have Been Waived

The AG's Office has waived any claim of privilege for failing to raise it in a timely manner. *See In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) ("[A] person responding to a subpoena should at least assert any privileges within the 14 days provided in [Federal Rule of Civil Procedure] 45(c)(2)(B). A full privilege log may follow within a reasonable time, or if more time is needed an extension may be sought from the trial court." (quotation omitted)). Even if the AG's Office satisfied the 14-day requirement with its informal indication it planned to assert privilege, it has since waived the privilege by failing to follow-up with the required log within a reasonable time after the agreed-upon extension. *See id.*; *cf. Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 240 F.R.D. 44, 47 (D. Conn. 2007) ("A party failing to produce a privilege log [within a reasonable time] fails to perfect its claim of privilege and, therefore, may not rely upon it to forestall discovery." (citations omitted)). More than a month ago, the AG's Office said it was making "every effort to finalize our objections and prepare a privilege log," (*Ex. B* at 2), but it has yet to do so.

### The AG's Office Has Not Shown the Need to Maintain the Secrecy of Grand Jury Transcripts

Minutes of the grand jury that indicted Mr. Tankleff are no longer secret since Suffolk County is disclosing them. *See U.S. v. Rigas*, 281 F. Supp. 2d 733, 737 (S.D.N.Y. 2003). Rather, at issue are the minutes and exhibits from a 2008 grand jury post-dating the vacatur of Mr. Tankleff's conviction. Our understanding is that the AG's Office would comply with an order from this Court to disclose the minutes, but feels constrained by state law to withhold them until such an order issues. *See* N.Y. Crim. P. L. § 190.25(4).

As this Court is aware, it has ample authority to order disclosure of state grand jury materials. "[S]tate privilege law [does not apply] to a federal civil rights claim, [rather] the

magistrate must vindicate the purposes of federal discovery and privilege law." *King*, 121 F.R.D. at 187. "Thus, although New York preserves the secrecy of its grand jury by statute, that statute does not control in this [federal] action." *Myers v. Phillips*, No. 04-CV-4365, 2007 WL 2276388, at *1 (E.D.N.Y. Aug. 7, 2007) (citations and footnote omitted) (attached as *Ex. C*).

Under applicable federal privilege law, plaintiff must show a "particularized need" before the Court will compel the disclosure of grand jury materials. *Ruther v. Boyle*, 879 F. Supp. 247, 250 (E.D.N.Y. 1995). There is no dispute that plaintiff has just such a need. Given defendants' refusal to admit plaintiff's actual innocence, innocence is a critical factor in proving his claims. Sworn testimony about who actually committed the murders thus highly relevant. Moreover, if Mr. Tankleff was the target of a new grand jury,[1] a finding of "no true bill" tends to support his claim that there was no probable cause to prosecute him – or there would not have been if defendants had carried out their constitutional duty to investigate all the facts and circumstances of the crime in the first instance. As the culmination of the AG's investigation into those facts and circumstances, the 2008 grand jury is therefore discoverable. New witnesses were discovered during post-conviction proceedings leading to the vacatur of the conviction; the minutes will be useful to both sides in preparing for depositions, either to refresh witnesses' recollections or to impeach them with inconsistencies. In sum, the grand jury materials are critical to Mr. Tankleff's claims.

**No Law Enforcement Interest Outweighs the Need for Disclosure**

The law enforcement privilege is "based primarily on the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files." *Miller v. Mehltretter*, 478 F. Supp. 2d 415, 424 (W.D.N.Y. 2007) (quotation omitted; alteration original); *see In re Dep't of Investigation*, 856 F.2d 481 (2d Cir.1988). As a qualified privilege, "there is a need to balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." *Miller*, 478 F. Supp. 2d at 424 (quotation omitted). Although the AG's Office has yet to identify any law enforcement interest protected by nondisclosure, at best, any such interest would be generalized, as it appears that no future prosecution of the murders is anticipated. Yet "generalized policies" are insufficient to support a claim of privilege; rather, there must be "substantial threshold showing that there are specific harms likely to accrue from disclosure of specific materials." *MacNamara v. City of New York*, 249 F.R.D. 70, 78 (S.D.N.Y. 2008) (quotation and brackets omitted). Upon information and belief, there are no extant wiretaps, no confidential informants or undercover officers who would be jeopardized, nor any danger of exposing some unique or ongoing investigation. *Cf. Schiller v. City of New York*, 252 F.R.D. 204 (S.D.N.Y. 2008).

The information sought, in contrast, is "both relevant and essential to the presentation of [his] case on the merits." *Miller*, 478 F. Supp. 2d at 424 (quotation omitted). For example, the AG's investigation discovered a "*previously unnoticed* bloody imprint found on a sheet on Arlene Tankleff's bed [that] appears to be that of a knife – presumably a murder weapon" that "d[id] not match the knife that was identified in the confession or any other knife found in the Tankleff home." (Memo. in Support of the Peoples' Motion Pursuant to CPL 210.40 to Dismiss the Indictments, at

---

[1] Plaintiff does not know if he or another suspect was the target of the 2008 grand jury.

3

5–6 (attached as *Ex. D*) (emphasis added).) Furthermore, the AG's Office's investigation discovered "wrongdoing [by Detective James McCready], which was unknown prior to [its] investigation," (*id.* at 12), a discovery central to plaintiff's Section 1983 claim against defendant McCready. Thus, "the need for disclosure outweighs the need for secrecy [and] the privilege is overcome." *Miller*, 478 F. Supp. 2d at 424 (quotation omitted).

**The Deliberative Process Privilege Does Not Apply to Documents from the AG's Investigation**

The deliberative process "privilege protects 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Pearson v. City of New York*, No. 08-CV-3208, 2009 WL 3247433, at *1 (E.D.N.Y. Oct. 6, 2009) (slip op.) (attached as *Ex. E*) (quotation omitted). The privilege only protects such documents, however, if they were "created to assist the agency in the formulation of *a specific decision on policy*." *Id.* (emphasis added). This does not cover documents that are (1) "part of a routine and ongoing process of agency self-evaluation," (2) "explaining or interpreting an existing policy or measuring compliance with existing procedures," (3) "peripheral to actual policy formation," or (4) "purely factual, investigative matters [or] factual observations." *Id.* at *1–2 (quotations and citations omitted). As with the law enforcement privilege, "the deliberative process privilege is a qualified privilege, a court must weigh the various competing interests for and against disclosure of any document found to qualify as a deliberative document." *Id.* at *2.

It is impossible for plaintiff to evaluate the AG's Office's claim of this privilege absent a description of the documents withheld, but it is hard to imagine how documents from the AG's investigation of two specific murders or the decision to move to dismiss the indictments implicate agency policy. In contrast, internal memoranda discussing the dismissal of the indictment against Mr. Tankleff are highly relevant to his lawsuit because they likely describe both evidence of his innocence and flaws in Suffolk County's investigation and prosecution. At a minimum, the AG's Office should provide the Court with the opportunity to inspect these documents *in camera* so that it can evaluate the qualified privilege. *See id.* at *2–4.

For the foregoing reasons, plaintiff requests an order compelling production of these documents or, in the alternative, *in camera* review to determine whether disclosure is necessary. We have met and conferred with counsel for the AG's Office and advised them of our intent to file this letter motion, the 3-day response deadline, and the calendared December 11, 2009 court conference. Counsel indicated that he is available to appear at the conference to address this matter.

Sincerely,
/s/Deborah L. Cornwall
Deborah L. Cornwall

cc:   Risa Sugarman, Esq. (counsel for non-party Attorney General's Office)
Jonathan Schwartz, Esq. (counsel for non-party Attorney General's Office)
Richard Dunne, Esq. (counsel for Suffolk County defendants)
Barry Pollack, Esq.
Bruce Barket, Esq.

4