# EXHIBIT D

```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-----------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,
                                                    Indictment Numbers
                                                    1535-88/1290-88

                -against-
                                                    MEMORANDUM OF LAW IN
                                                    IN SUPPORT OF THE
MARTIN TANKLEFF,                                    PEOPLES' MOTION
                            Defendant.              PURSUANT TO CPL
                                                    210.40 TO DISMISS
                                                    THE INDICTMENTS


-----------------------------------------X
```

BENJAMIN E. ROSENBERG, Chief Trial Counsel in the New York State Attorney General's Office affirms under penalties of perjury that:

1.  I am an attorney admitted to practice law in the Courts of the State of New York, and am fully familiar with the facts and circumstances of the above-captioned indictments, and

2.   I am submitting this affirmation and memorandum of law in support of an application for an Order dismissing the above-captioned indictments pursuant to CPL Section 210.40.

The Attorney General respectfully submits this memorandum of law in support of his motion pursuant to CPL 210.40 to dismiss indictments numbered 1535-88 and 1290-88 in the interests of justice.

1

**MEMORANDUM OF LAW**

After extensive review, the Attorney General has determined that although there is some evidence that the defendant, Martin Tankleff, committed the crimes charged, after 20 years the evidence is insufficient to conclude or to prove beyond a reasonable doubt that he did so.  The issue in this case is not whether there is evidence that Tankleff committed the crimes charged, but whether there is sufficient evidence to proceed in good faith with this case and ultimately to convince a jury of the defendant's guilt beyond a reasonable doubt.

## Background

Tankleff was convicted in 1990 for the brutal murder of his parents, Seymour and Arlene Tankleff, in their home in Belle Terre, Long Island.  At trial, the central piece of evidence was the confession that Tankleff, then 17, made to the police on the day of the murders.  In the 18 years since that conviction, Tankleff has vigorously maintained his innocence, claiming the confession was coerced.  His legal and investigative team have presented, in legal proceedings, an alternative theory about who committed the murders.  The courts have rejected various challenges to the convictions.  In December 2007, however, Supreme Court, Appellate Division, vacated Tankleff's conviction

2

concluding that sufficient evidence had been presented to warrant a new trial.

The District Attorney announced that he would dismiss the charges against Tankleff, and seek a special prosecutor to investigate the defense's alternative theory (which the District Attorney had publicly stated he did not believe). Before the District Attorney filed his motion, however, the Governor assigned the Attorney General as special prosecutor to investigate the murders of Seymour and Arlene Tankleff.

The Attorney General assembled a team of lawyers and investigators who together have extensive experience on the federal, state and local level in the prosecution and defense of defendants in criminal proceedings and the investigation of criminal cases for both prosecutors and private practitioners. Over the course of six months, the team worked intensively on re-investigating the case, both the one presented by the prosecution and the alternative theory put forward by the defense.

We have reviewed thousands of pages of testimony, law enforcement reports and notes. We have interviewed approximately 70 witnesses in several states, some of them multiple times. We also interviewed the defendant, Martin Tankleff. In addition, we consulted experts in the fields of

3

forensic pathology, DNA testing, crime scene analysis, tool marks, and false confessions, and we have submitted materials for scientific analysis to the New York State Police Forensic Investigation Center (FIC) and to the Office of the Chief Medical Examiner of New York (OCME). In all, we submitted approximately 108 separate items to the FIC for DNA, Serology, Fingerprint, Trace Evidence, and Pattern analysis.

The result of this investigation yielded the following evidence supporting a case against Tankleff. His parents were found dead or fatally wounded in their house in early morning of September 7, 1988; there was no sign of a break-in or of a robbery, and the defendant, who was the only other person in the house, was unharmed. The defendant was the beneficiary of his parents' wills, and just days before the murders he had made references to friends of the benefits that he would enjoy were his parents to die. The defendant made vague but incriminatory statements to a family member and direct confessions to some fellow inmates in prison, and he gave a confession to the police, which he later disavowed.

The strength of the case that a jury would hear would, however, be diminished for a number of reasons: (1) changes in the law would preclude prosecution of the defendant on indictment 1290-88, for the murder of Arlene Tankleff, and might

4

limit evidence that would be probative as to the murder of Seymour Tankleff; (2) changes in the law may preclude use of the defendant's confession, which was the central piece of evidence at the first trial; (3) the passage of time since the crime has resulted in a dimming of the recollection of some witnesses and the death of others; (4) there is no biological or physical evidence strongly linking the defendant to the crimes, even after a renewed set of forensic tests using the most up-to-date technology; (5) there is some evidence that others may have committed the killings;[1] and (6) there is evidence of problematic conduct on the part of one member of the original investigatory team that could taint the presentation of the prosecution case.

The absence of biological or physical evidence is compounded by a new piece of forensic evidence uncovered during our investigation:  A previously unnoticed bloody imprint found on a sheet on Arlene Tankleff's bed appears to be that of a knife – presumably a murder weapon – but expert analysis shows that it does not match the knife that was identified in the

---

[1]    While the defendant has no obligation affirmatively to raise a defense, in this case he has vigorously pursued an alternative theory that we have considered in evaluating whether we should go forward with a prosecution.  Many, but not all, of witnesses the defense relied on have recanted their testimony or changed their stories when we interviewed them.

5

confession or any other knife found in the Tankleff home.   This new evidence significantly weakens the case against Tankleff.

Here, for the reasons summarized above and set forth below, justice requires us not to proceed against defendant Martin Tankleff for the murder of his parents.

## Argument

CPL 210.40 provides that the prosecutor or the defense may move "in furtherance of justice" to dismiss an indictment "or any count thereof."   The section states that "dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant . . . would constitute or result in injustice."  Id.   The section directs the court to consider the following factors:

  (a)   the seriousness and circumstances of the offense;

  (b)   the extent of harm caused by the offense;

  (c)   the evidence of guilt, whether admissible or inadmissible at trial;

  (d)   the history, character and condition of the defendant;

  (e)   any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant;

6

(f)   the purpose and effect of imposing upon the defendant a  sentence authorized for the offense;

(g)   the impact of a dismissal upon the confidence of the public in the criminal justice system;

(h)   the impact of a dismissal on the safety or welfare of the community;

(i)   where the court deems it appropriate, the attitude of the complainant or victim with respect to the motion;

(j)   any other relevant fact indicating that a judgment of conviction would serve no useful purpose.

We consider these factors in turn:

**A.    The Seriousness and Circumstances of the Offense**

The crime charged was a double murder, and its seriousness cannot be doubted.

In a retrial of the case, the People would not be able to try the defendant for the murder of Arlene Tankleff.  The jury acquitted Tankleff of intentionally murdering his mother, but found that he had killed her with depraved indifference.  Double jeopardy principles establish that the defendant cannot be retried for the intentional murder of his mother, but only on a theory of depraved indifference murder.

7

The theory of depraved indifference murder, although tenable when the case was originally tried, is now legally barred on account of recent Court of Appeals cases that have narrowed considerably the theory of depraved indifference homicide.  See, e.g., People v. Suarez, 6 N.Y.3d 202 (2005); People v. Payne, 3 N.Y.3d 266, 270 (2004).[2]

Although we do not believe that the impossibility of trying Tankleff for the murder of his mother lessens the "seriousness and circumstances" of the crime, it may introduce evidentiary limitations on any retrial of Tankleff for the murder of his father.

**B.    The Extent of the Harm Caused by the Offense**

The harm caused by the offense is, as discussed above, the death of two people only one of whose deaths can be the subject of any criminal trial.

**C.    The Evidence of Guilt, Regardless of Admissibility**

       1.    The confession

The principal piece of evidence against Tankleff was his confession.  Although admissibility is not a factor in this motion, it bears note that there is a substantial question

---

[2]    In announcing that he would not pursue any further charges against Tankleff, the District Attorney noted, correctly, that it would be impossible, given the changes in the law, to try Tankleff for depraved indifference murder of his mother.

whether the confession would be admissible.  The previous courts that sat on this case have split on the question whether Tankleff was in custody when he made certain incriminating statements.  The Second Circuit Court of Appeals, hearing the case on a *habeas corpus* petition, found that Tankleff was in custody, but that his confession was admissible pursuant to Oregon v. Elstad, 470 U.S. 298 (1985).  Since that decision, however, the Supreme Court has decided Missouri v. Seibert, 542 U.S. 600 (2004), which "lays out an exception to Elstad for cases in which a deliberate two-step strategy was used by law enforcement to obtain the postwarning confession."  United States v. Carter, 489 F.3d 528, 536 (2d Cir. 2007).  Under the Missouri v. Seibert test, the confession may not be admissible.

In addition, there is substantial controversy over the reliability of the confession.  In particular, physical evidence contradicts some aspects of the confession, and fails to corroborate other aspects of the confession, where strong corroboration might have been expected.  For example:  (i) the confession identified a particular knife as having been a murder weapon, but there is no forensic evidence that links the knife to the crimes; (ii) the confession identified a barbell in Tankleff's bedroom as having been used in the murders, but forensic testing was unable to link the barbell to the crimes

9

other than to say that it was impossible to <u>exclude</u> the barbell as having been used in the crimes;[3] and (iii) the FIC has discovered a previously unnoticed bloody imprint in one of the sheets on Arlene Tankleff's bed; the imprint appears to be that of a knife (presumably a murder weapon), but expert analysis shows that it does <u>not</u> match the knife that was identified in the confession, nor does the imprint match any other knife found in the Tankleff's home.

Furthermore, there is no part of the confession that was corroborated by physical evidence and that could have been known by only the murderer.  Such corroboration would have weighed significantly in favor of the confession's reliability.

   2. <u>The defendant's theory</u>

---

[3] Expert testimony at the trial provided that the barbell was "consistent" with wounds suffered by Arlene Tankleff, but the same expert testified that a hammer or tire iron could also have made the wounds.  Testing by FIC of a bloody impression on Arlene Tankleff's bedsheet (different from the bloody imprint referred to in the text) yielded only the conclusion that the barbell "cannot be excluded" as having made the impression.

There is also, as Supreme Court, Appellate Division, noted, testimonial evidence from a number of sources, some of which are clearly independent of any of the others, that other persons may have committed the murders.  We have found no forensic evidence linking any of these persons to the murder, and our investigation has revealed that many of the witnesses were unreliable.  Nevertheless, some of the witnesses were credible, and while, on balance, the defense theory does not appear to be supported by clear evidence, there are sufficient conflicting pieces that could raise the issue of reasonable doubt.  We further note that the central figure in the defendant's alternative theory, Seymour Tankleff's business partner, Jerry Steuerman, refused to cooperate in our investigation of this matter.

### D.   The Defendant's History and Character

Tankleff had no criminal record prior to September 7, 1988. Although he appears to have had some disciplinary problems in school, they were generally minor.   He had no criminal or serious violations or infractions while in custody on this case.

### E.   Misconduct of Law Enforcement Personnel

The behavior of one of the detectives on the case, Detective James McCready (retired), was problematic in this case.  The evidence that we have collected shows that he showed

11

crime scene photographs to witnesses when there was no legitimate law enforcement reason for doing so.  As Detective McCready was a central figure in the first trial of this case, and would likely be in any subsequent trial, his wrongdoing, which was unknown prior to our investigation, would make the case harder for the People to try.[4]

**F.    Purpose and Effect of a Sentence**

Martin Tankleff has served almost 17 years in prison.  If he were to be re-convicted, the People would ask for a sentence of 25 years to life be imposed.  The People anticipate that the time already served would be counted against any sentence imposed following trial.

**G.    The Impact of a Dismissal On the Public's Confidence in the Criminal Justice System**

---

[4]    Detective McCready acted alone when he showed the photographs to others.  Based on our investigation, no other law enforcement representative with whom we met from either the Suffolk County Police Department or the Suffolk County District Attorney's Office, was aware that Detective McCready had engaged in such behavior, and all of them stated that it was improper. Detective McCready himself recognized that it was improper:  He told one witness that he was behaving improperly even as he showed photographs to that witness.

12

This motion should not undermine or lessen the public's confidence in the criminal justice system -- to the contrary, that confidence should be enhanced.   Our motion is based upon our unbiased review of the evidence, and is guided by our obligation to do justice, not seek vengeance.   There has been much written about this case, and there are strong passions on all sides.   We have sought to avoid both the passion and the heated rhetoric, and we believe that the evidence does not support a reprosecution of Tankleff.

**H.   The Impact of Dismissal on the Community's Safety and Welfare**

There is no evidence that Tankleff is mentally ill or disturbed or a danger to society.

**I.   Impact on Victims**

The victims, of course, are deceased.   With two exceptions, Tankleff's family members – including relatives of both victims – have urged that Tankleff not be retried because they believe that Tankleff did not commit the murders.   Those two family members believe that Tankleff should be retried.

**J.   Other Factors**

We are unaware of any further factors, not considered above, relevant to the motion.

## Conclusion

For the foregoing reasons, we respectfully submit that indictments numbered 1535-88 and 1290-88 should be dismissed in the interests of justice.

Dated:     New York, New York
           June 30, 2008

                                   ANDREW M. CUOMO
                                   Attorney General of the
                                   State of New York


                              By:  _____
                                   Benjamin E. Rosenberg
                                   Chief Trial Counsel

                                   120 Broadway, 25th Floor
                                   New York, NY 10271
                                   (212) 416-8743


THOMAS SCHELLHAMMER
Assistant Deputy Attorney General

RISA SUGARMAN
Assistant Deputy Attorney General

ELIZABETH GLAZER
Special Counsel to the Attorney General

MITRA HORMOZI
Special Deputy Chief of Staff

Of Counsel

14