# EXHIBIT E

Page 1

Slip Copy, 2009 WL 3247433 (E.D.N.Y.)
**(Cite as: 2009 WL 3247433 (E.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
I'Mecca Burton PEARSON, a minor by her mother and natural guardian Taniesha Pearson, Plaintiff,
v.
The CITY OF NEW YORK, et al., Defendants.
**No. CV 2008-3208(SLT)(MDG).**

Oct. 6, 2009.

Vilia B. Hayes, Hughes, Hubbard & Reed, LLP, Norman Siegel, New York, NY, for Plaintiff.

Jessica Talia Cohen, New York City Law Department, New York, NY, for Defendants.

*ORDER*

GO, United States Magistrate Judge.

*1 Plaintiff I'Mecca Burton Pearson, a minor, brings this civil rights action under 42 U.S.C. § 1983 arising from her being handcuffed behind her back with metal handcuffs by a New York City Police Department ("NYPD") Officer while on a school bus. Defendants moved previously for a protective order to prevent the disclosure of documents relating to the NYPD's pilot program introducing the use of Velcro handcuffs in schools. *See* ct. doc. 18. By order dated May 18, 2009, I denied that aspect of the defendants' motion that argued that the documents sought are irrelevant and granted the City of New York (the "City defendant") an opportunity to supplement its submission regarding the invocation of the deliberative process privilege. Ct. doc. 30. The City defendant has now produced a privilege log and the affidavit of NYPD Captain Michael Tighe in support of its assertion of privilege. Ct. docs. 35, 36. On June 17, 2009, I ordered the City to submit the withheld documents which I have reviewed *in camera*.

*DISCUSSION*

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Tigue v. U.S. Dep't of Justice,* 312 F.3d 70, 76 (2d Cir.2002); *Grand Cent. P'ship, Inc. v. Cuomo,* 166 F.3d 473, 482 (2d Cir.1999). The privilege "is designed to promote the quality of agency decisions by preserving and encouraging candid discussion between officials." *Nat'l Council of La Raza v. Dep't of Justice,* 411 F.3d 350, 356 (2d Cir.2005) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8-9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001)). "The rationale underlying the privilege is that "those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *Grand Cent.,* 166 F.3d at 481 (quoting *United States v. Nixon,* 418 U.S. 683, 705, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

To qualify for protection under the deliberative process privilege, a document must be both "predecisional" and "deliberative." *Tigue,* 312 F.3d at 76; *Grand Cent.,* 166 F.3d at 482. A document is predecisional "when it is prepared in order to assist an agency decisionmaker in arriving at his decision." *Tigue,* 312 F.3d at 80; *Grand Cent.,* 166 F.3d at 482. The privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Tigue,* 312 F.3d at 80; *Grand Cent.,* 166 F.3d at 482. The document must have been created to assist the agency in the formulation of a specific decision on policy rather than "part of a routine and ongoing process of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

agency self-evaluation." *Tigue,* 312 F.3d at 80 (quoting *Maricopa Audubon Soc'y v. U.S. Forest Serv.,* 108 F.3d 1089, 1094 (9th Cir.1997)); *see also Grand Cent.,* 166 F.3d at 482 (courts require a showing that "pinpoint[s] the specific agency decision to which the document correlates"). By contrast, explaining or interpreting an existing policy or measuring compliance with existing procedures is not predecisional, and thus is not privileged. *See Turkmen v. Ashcroft,* No. 02-CV-2307, 2004 U.S. Dist. LEXIS 14537, at *8 (E.D.N.Y. July 29, 2004); *Powell v. New York City Health & Hosps. Corp.,* No. 03 Civ. 3264, 2003 WL 22871908, at *1 (S.D.N.Y. Dec. 4, 2003); *Tortorici v. Goord,* 216 F.R.D. 256, 258 (S.D.N.Y.2003); *Nat'l Congress for Puerto Rican Rights v. City of New York,* 194 F.R.D. 88, 97 (S.D.N.Y.2000).

*2 A document is deliberative when it is "actually ... related to the process by which policies are formulated." *Grand Cent.,* 166 F.3d at 482; *Hopkins v. U.S. Dep't of Hous. & Urban Dev.,* 929 F.2d 81, 84 (2d Cir.1991). "[T]he privilege does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." *Tigue,* 312 F.3d at 80; *Grand Cent. .,* 166 F.3d at 482. The privilege also does not extend to "purely factual, investigative matters" nor "factual observations." *EPA v. Mink,* 410 U.S. 73, 89, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Grand Cent.,* 166 F.3d at 482; *Hopkins,* 929 F.2d at 85. "Thus, factual findings and conclusions, as opposed to opinions and recommendations are not protected." *Reino de Espana v. Am. Bureau of Shipping,* 2005 WL 1813017, at *11 (S.D.N.Y. Aug.1, 2005).

The burden of justifying application of the privilege rests with the party asserting it. *See Von Bulow v. Von Bulow,* 811 F.2d 136, 144 (2d Cir.1987). Since the deliberative process privilege is a qualified privilege, a court must weigh the various competing interests for and against disclosure of any document found to qualify as a deliberative document. *See Mr. and Mrs. B v. Bd. of Educ.,* 35 F.Supp.2d 224, 228 (E.D.N.Y.1998); *United States Postal Serv. v. Phelps Dodge Refining Corp.,* 852 F.Supp. 156, 165 (E.D.N.Y.1994). Among the non-exhaustive list of factors courts consider in balancing the parties' competing interests are:

1) the relevance of the evidence to be protected; 2) the availability of other evidence; 3) the "seriousness" of the litigation and the issues involved; 4) the role of the government in the litigation; and 5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Phelps Dodge,* 852 F.Supp. at 165; *Torres v. City Univ. of N.Y.,* No. 90 CV 2278, 1992 WL 380561, at *7 (S.D.N.Y. Dec.3, 1992).

The City defendant offers the declaration of Captain Michael Tighe, Commanding Officer of the NYPD's Management Orders and Directives Section, in support of its assertion of deliberative process privilege in this case. Captain Tighe explains that a proposed order was drafted "concerning alternatives to the use of handcuffs to restrain a young child taken into police custody. The purpose of this proposed order was to direct and advise certain members of the service that they may utilize nylon/Velcro restraining devices when appropriate." Ct. doc. 35-3 at ¶ 2. The proposed order was then circulated to various high ranking members of the NYPD for their comments. *Id.* at ¶ 3. The City argues that the withheld documents contain these comments and opinions that are the subjective statements of the authors rather than official NYPD policy. *Id.* at ¶ 4. The City further claims that disclosure of these opinions would "chill the candor of NYPD members and decision-makers in the future." *Id.* at ¶ 6.

*3 The withheld documents I examined can be divided into three categories. The first category consists of the final order that was issued by the NYPD implementing the pilot program. The second category consists of drafts of the final order. The third category consists of the comments and recommend-

ations of high ranking members of the NYPD concerning the proposed order.

As to the first category (Bates Nos. NYC 130-32), by definition, the final order implementing the velcro handcuff policy is neither predecisional nor deliberative. Rather, it is the specific "decision" to which the opinions and recommendations contained in the other documents correlate. The City defendant's argument that a "pilot" program is by nature pre-decisional is misplaced. Ct. doc. 20 at 8. The decision to institute a pilot program is a final agency decision even if the program may be expanded or terminated in the future.

As to the second category of documents (Bates Nos. NYC 133-37, 179-82, 183-85), drafts are generally protected by the deliberative process privilege. *See Tigue,* 312 F.3d at 80; *Grand Cent.,* 166 F.3d at 482. However, documents that are later adopted, either formally or informally, as the agency position on an issue lose their predecisional and deliberative character. *See NCLR,* 411 F.3d at 356-57; *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980). A draft that was ultimately adopted as the final operations order is not privileged. "Draft 19" (Bates Nos. 133-37), which was attached to two transmittal memorandums (Bates Nos. 133 and 134), is virtually identical to the final order that was issued with the exception of one typographical error. Thus, it should be produced, along with the two transmittal documents, neither of which contain any opinions, recommendations or deliberations. One contains a request for the police commissioner's approval of the draft that later became final and the other communicates the police commissioner's approval of that draft. In contrast, the transmittal memorandum (Bates No. NYC 179) that was attached to a prior draft need not be produced since that draft was substantially revised and the transmittal memorandum reflects predecisional deliberations.

The third category of documents (Bates Nos. 138-178, 186-188) are both predecisional and deliberative. The documents are clearly predecisional because they relate to the decision to implement the pilot program and were created prior to the issuance of the final order. The documents are also deliberative because they reflect opinions, recommendations and deliberations comprising part of the process of formulating the final policy.

Accordingly, this Court must next balance the various interests of the parties and the public in determining whether the deliberative documents should be disclosed, keeping in mind that the burden of persuasion remains with defendants. *King v. Conde,* 121 F.R.D. 180, 190-91 (E.D.N.Y.1988). Based on my *in camera* inspection, I find that the documents sought are, at most, indirectly related to the issues in this litigation. As the documents generally make clear, the pilot project is designed to *test* the efficacy of the use of nylon/Velcro restraints. Almost all of the deliberations contained in the documents are directed to the formulation of the contours of the specific pilot project rather than the efficacy of nylon/Velcro hancuffs. Many relate to operational and drafting issues relating to the fact that the project would be carried out by School Safety officials in specified elementary schools. As such, the thought processes of the NYPD officials in formulating the pilot project adopted more than a year after the incident giving rise to plaintiffs' claims have little bearing on defendants' knowledge or intent in this case.

*4 Significantly, the plaintiffs have not argued that the views of the NYPD officials involved in commenting on the pilot project are the only sources of information regarding the relative efficacy of the nylon/Velcro handcuffs to be used in the pilot project. On the contrary, it appears from earlier discussions in this litigation that information may be available from other police departments and sources. Notwithstanding the seriousness of plaintiffs' concerns regarding the proper use of handcuffs on minors, I find that the withheld documents are not of great importance to the plaintiff's case when weighed against the risks of disclosure. While this Court is often skeptical of *pro forma* as-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

sertions by government officials that disclosure would chill candor, it would be ironic if this litigation created a disincentive for the NYPD to explore alternatives to the use of metal handcuffs on children in other situations.

## CONCLUSION

For the foregoing reasons, the City defendant's motion for a protective order is granted in part and denied in part. The City must produce documents Bates Nos. NYC 130-37.

**SO ORDERED.**

E.D.N.Y.,2009.
Pearson v. City of New York
Slip Copy, 2009 WL 3247433 (E.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.