**NEUFELD SCHECK & BRUSTIN, LLP**
99 Hudson Street
New York, New York 10013

Tel: 212-965-9081
Fax: 212-965-9084

Peter J. Neufeld
Barry C. Scheck
Nick Brustin
Debi Cornwall

Anna Benvenutti Hoffmann
Emma Freudenberger
Sarah Crowley

Johnnie L. Cochran, Jr.
(1937-2005)

May 11, 2010

**Via UPS Next-Day Air**
Mr. David Steiner
Commissioner of Education
New York State Education Department
Room 111, Education Building
Albany, NY 12234

Re:   Appeal of Denial of Freedom of Information Law (FOIL) Request
for N.Y. State Investigation Commission (SIC) materials relating to
*An Investigation of the Suffolk County District Attorney's Office and Police Department* (April 1989) and
*An Investigation into the Procedures Resulting in the Arrest and Conviction of Martin Tankleff for the Murders of Seymour and Arlene Tankleff* (December 2008)

Dear Mr. Steiner:

     I write to appeal the April 13, 2010 decision of James D. Folts, Head of Reference Services (*attached as* Exhibit A), denying my Freedom of Information Law ("FOIL") request described below.

     On April 2, 2010, I submitted a written FOIL request (*attached as* Exhibit B) for records that were created or collected by the now-defunct State of New York Commission of Investigation ("SIC") and are now maintained in the New York State Archives, as prescribed by the Laws of New York, 2008, ch. 56, pt. G, § 1 and McKinney's Arts and Cultural Affairs Law § 57.05(5). Specifically, I requested access on behalf of my client, Martin Tankleff, to the underlying files from the SIC investigations that culminated in the following two reports: *An Investigation into the Procedures Resulting in the Arrest and Conviction of Martin Tankleff for the Murders of Seymour and Arlene Tankleff* (published December 2008) and *An Investigation of the Suffolk County District Attorney's Office and Police Department* (published April 1989).

Mr. Folts' denial of my request was stated in categorical terms regarding the release of any SIC files, not those records I specifically requested on behalf of Mr. Tankleff. The grounds for Mr. Folts' denial were:

1. Section 5 of Chapter 989 of the 1958 Laws, which he stated "does not allow the release of the requested documentation."

2. Section 2(11)(d) of Chapter 989 of the 1958 Laws, which he stated directed that "the SIC shall not make public the particulars of [witness] examinations."

3. Public Officers Law § 87(2)(b) and § 89(2)(b)(v), which he stated exempts from disclosure records that "would constitute an unwarranted invasion of personal privacy."

4. Public Officers Law § 87(2)(b) and § 89(2)(g), which he stated exempts from disclosure "inter- or intra-agency materials, which are not statistical or factual tabulations or data, instructions to staff that affect the public, or final agency policy or determinations."

5. Public Officers Law § 87(2)(e)(iii), which he stated exempts from disclosure records that were "compiled for law enforcement purposes and which, if disclosed, would . . . [i]dentify a confidential source or disclose confidential information relating to a criminal investigation."

6. Public Officers Law § 87(2)(e)(iv), which he stated exempts from disclosure records that were "compiled for law enforcement purposes and which, if disclosed, would . . . reveal criminal investigative techniques or procedures, except routine techniques and procedures."

7. Attorney-client privilege.

*See* Exhibit A.

As an initial matter, grounds 1 and 2 are not legal grounds for withholding documents otherwise available under FOIL. The organic act of the SIC, Chapter 989 of the 1958 Laws of New York, was repealed in 2008, taking effect in 2009:

> This act shall take effect May 1, 1958 and remain in effect *until March 31, 2009*, at which time the temporary state commission of investigation shall deliver its records to the state archives, and the state archives shall preserve such records pursuant to section 57.05 of the arts and cultural affairs law.

Laws of New York, 1958, ch. 989, § 13, *as amended by* Laws of New York, 2008, ch. 56, pt. G (emphasis added). Thus, the sections of the 1958 Laws cited are without any legal effect. *See* N.Y. Stat. Law § 411 ("In the absence of a savings clause, the repeal of a statute wipes it out as though it never existed."). Furthermore, not only did the repeal eliminate the non-disclosure provisions cited by Mr. Folts, it explicitly directed that the Archives preserve the files pursuant to N.Y. Arts & Cult. Aff. § 57.05, which provides that, *inter alia*:

-2-

> The state archives shall acquire and assume the official custody and responsibility for preserving *and making available for reference and use* the official records of any public office, body or board now extinct, or hereafter becoming extinct, which are deemed to have sufficient historical value, or other value to warrant their continued preservation by the state, if the custody and preservation of such records are not otherwise provided for by law.

*Id.* § 57.05(5) (emphasis added). Thus, to now deny access to the SIC files directly contravenes the statutory scheme controlling them.

Grounds 3-6 may, however, be legitimate reasons to withhold *some* of the requested documents. But it is not plausible that *all* of the records reflect either an invasion of personal privacy, § 89(2)(b) (Ground 3), internal deliberations, § 89(2)(g) (Ground 4), or confidential law enforcement information, § 87(2)(e) (Ground 5-6). Mr. Folts' conclusory and blanket assertions of these exemptions are not permitted under these provisions: "Pursuant to FOIL, there is a presumption that all government and agency records are open for public inspection unless the agency seeking to prevent disclosure demonstrates that the requested information falls squarely within a FOIL exemption by articulating a *particularized and specific* justification for denying access." *Humane Soc'y v. Fanslau*, 863 N.Y.S.2d 519, 538 (3d Dep't 2008) (emphasis added; citations omitted); *see also Carnevale v. City of Albany*, 91 N.Y.S.2d 495, 497 (3d Dep't 2009) ("Conclusory statements are insufficient to deny access, as are categorical assertions . . . ." (citations omitted)); *Buffalo Broad. Co., Inc. v. N.Y.S. Dep't of Corr. Servs.*, 552 N.Y.S.2d 712, 110 (3d Dep't 1990) ("Respondents' conclusory allegations, made without even reviewing the [materials], were insufficient to confer a blanket exemption of all the [materials] from FOIL . . . ."); N.Y. Pub. Off. Law § 89(4)(b) ("In the event that access to any record is denied pursuant to the provisions of subdivision two of section eighty-seven of this article, the agency involved shall have the burden of proving that such record falls within the provisions of such subdivision two."). The Archives must provide "particularized and specific justification" for withholding those documents, if any, protected by the exemptions cited by Mr. Folts, and make the balance available pursuant to my request.

Similarly, Mr. Folts' bare assertion of the attorney-client privilege does not provide a basis for withholding the requested documents. While it is true that, "[u]nder FOIL, an agency need not disclose documents 'specifically exempted from disclosure by state or federal law,'" which includes documents protected by the attorney-client privilege, as with any other FOIL exemption, the burden of establishing this exemption lies with the agency. *Morgan v. N.Y.S. Dep't of Envtl. Conservation*, 779 N.Y.S.2d 643, 644-45 (3d Dep't 2004) (quoting N.Y. Pub. Off. Law § 87(2)(a)). Specifically, the Archives must show that the withheld documents reflect "confidential communications between a lawyer and client relating to legal advice sought by the client." *Leyton v. City University of New York*, 25 Misc.3d 1214(A), (Sup. Ct. [N.Y. Cty.] Oct. 8, 2009) (quoting *In re Nassau County Grand Jury Subpoena Duces Tecum Dated June 24, 2003*, 4 N.Y.3d 665, 678 (2005)). Mr. Folts made no attempt to establish the existence of an attorney-client relationship, the confidential nature of any communication reflected in the documents, and that the documents reflect legal advice. Furthermore, as the SIC files were delivered to the Archives, any attorney-related communications that occurred prior to delivery are no longer

confidential as a matter of law. *Delta Financial Corp. v. Morrison*, 820 N.Y.S.2d 745, 748 (Sup. Ct. [Nassau Cty.] 2006) ("As a general rule, disclosure of attorney-client communication to a third party or communications with an attorney in the presence of a third party, not an agent or employee of counsel, vitiates the confidentiality required for asserting the privilege.").

Thus, Mr. Folts' letter did not articulate any valid, particularized and specific basis for denying my FOIL request, and I hereby reiterate my request in full for the underlying files from the SIC investigations that culminated in the following two reports: *An Investigation into the Procedures Resulting in the Arrest and Conviction of Martin Tankleff for the Murders of Seymour and Arlene Tankleff* (published December 2008) and *An Investigation of the Suffolk County District Attorney's Office and Police Department* (published April 1989). For each investigation, we request access to the complete file, including but not limited to:

1. Any and all transcripts of hearings held, interviews or sworn testimony transcribed, written statements taken by the SIC or any of its employees or agents, and exhibits introduced;

2. Any documents created in the course of the investigation by the SIC or any of its employees or agents, including but not limited to, statements, notes, memoranda, discussions and reports regarding employees of the Suffolk County Police Department, employees of the Suffolk County District Attorney's Office, or other individuals with knowledge related to the investigation, whether oral, audio, taped, or written;

3. Any and all documents reflecting allegations from any source that employees of the Suffolk County Police Department, specifically including but not limited to the Homicide Squad, or employees of the Suffolk County District Attorney's Office engaged in the fabrication, spoliation, destruction, and/or withholding of evidence or investigations into such allegations, whether or not the allegation was substantiated, including without limitation any charges, statements, notes, reports, memoranda or correspondence, transcripts, findings, conclusions, or recommendations made by investigating authorities, and civil, administrative, or criminal complaints originating from civilians, law enforcement, or judicial personnel;

4. Any and all documents containing allegations from any source that employees of the Suffolk County Police Department, specifically including but not limited to the Homicide Squad, or employees of the Suffolk County District Attorney's Office pressured, intimidated, abused, threatened, coerced, or made promises, rewards, or inducements to any witness, crime victim, or suspect or investigations into such allegations, whether or not the allegation was substantiated, including without limitation any charges, statements, notes, reports, memoranda or correspondence, transcripts, findings, conclusions, or recommendations made by investigating authorities, and civil, administrative, or criminal complaints originating from civilians, law enforcement, or judicial personnel;

5. Any and all documents containing allegations from any source that employees of the Suffolk County Police Department, specifically including but not limited to the Homicide Squad, or employees of the Suffolk County District Attorney's Office perjured themselves or provided false information in the course of a criminal investigation or criminal trial proceeding

or investigations into such allegations, whether or not the allegation was substantiated, including without limitation any charges, statements, notes, reports, memoranda or correspondence, transcripts, findings, conclusions, or recommendations made by investigating authorities, and civil, administrative, or criminal complaints originating from civilians, law enforcement, or judicial personnel;

6. Any and all documents containing allegations from any source that employees of the Suffolk County Police Department, specifically including but not limited to the Homicide Squad, or employees of the Suffolk County District Attorney's Office knew or should have known of misconduct by employees of the Suffolk County Police Department in the course of a criminal investigation or criminal trial proceeding and failed to report that misconduct to the District Attorney or other appropriate Suffolk County official or investigations into such allegations, whether or not the allegation was substantiated, including without limitation any charges, statements, notes, reports, memoranda or correspondence, transcripts, findings, conclusions, or recommendations made by investigating authorities, and civil, administrative, or criminal complaints originating from civilians, law enforcement, or judicial personnel;

7. Any and all statements made by any Suffolk County official pertaining to the Suffolk County Police Department's policies, practices, customs, and procedures concerning the interrogation of suspects and witnesses, the videotaping of interrogations and/or confessions, and documentation of investigations;

8. Any and all statements made by any Suffolk County official pertaining to the Suffolk County District Attorney's Office's policies, practices, customs, and procedures concerning the interrogation of suspects and witnesses, the videotaping of interrogations and/or confessions, and documentation of investigations;

9. Any and all documents pertaining to the management structure of the Suffolk County Police Department;

10. Any and all documents pertaining to the management structure of the Suffolk County District Attorney's Office;

11. Any and all documents pertaining to any and all structures within the offices of the Suffolk County Police Department and/or the Suffolk County District Attorney's Office set up to receive, process, and investigate allegations of misconduct and to provide criticism, discipline, or remediation, or to pursue prosecution following a finding substantiating an allegation of misconduct against a Suffolk County Police Department employee or agent;

12. Any and all documents, including but not limited to any and all writings, memoranda, transcripts, docket entries, exhibits, drawings, graphs, charts, photographs, phono records, tapes, computer files, datebooks, time sheets, logs, electronic or computerized data compilations, and any other data compilation from which information can be obtained, containing information obtained from, allegations made against, or testimony given by or regarding representatives or members of the Suffolk County Police Department's Homicide

Squad or any and all of the following Suffolk County Police Department employees: Kevin James McCready, Norman Rein, Charles Kosciuk, Robert Doyle, and/or John McElhone.

From discussions that I and Elizabeth Daniel, a paralegal in my office, have had with Mr. Folts, Louise DeCandia, and Bill Gorman, I understand that these voluminous files have not yet been fully sorted or indexed since the Archives obtained them last year, but that Archives staff has begun to review them and identify responsive materials. We recognize the inherent burden of our request for access to these records, and will do whatever we can to help facilitate this process. For example, we would be happy to send someone from our offices to review the records and designate those documents we wish to copy, and also to arrange for a third-party vendor to pick up, scan, and return the designated documents, at our expense.

Please do not hesitate to call Elizabeth Daniel or me with any questions or concerns about this request, and thank you in advance for your attention to this matter.

Sincerely,

Deborah L. Cornwall

Cc: James D. Folts
Louise DeCandia, Esq.
Barry Pollack, Esq. & Dawn Murphy-Johnson, Esq.
Bruce Barket, Esq.

# EXHIBIT A



Office of Cultural Education, Cultural Education Center 11A42, Albany, NY 12230
Telephone 518/474-8955 - Fax 518/408-1940
E-mail archref@nysed.gov - www.archives.nysed.gov

April 13, 2010

Deborah L. Cornwall, Esq.
Neufeld, Scheck & Brustin, LLP
99 Hudson Street
New York, NY   10013

Re:  FOIL Request for Temporary State Commission on Investigation (SIC) files

Dear Ms. Cornwall:

    This is in response to your April 2, 2010 Freedom of Information Law (FOIL) request for the files of SIC investigations that culminated in two reports: *An Investigation into the Procedures Resulting in the Arrest and Conviction of Martin Tankleff for the Murders of Seymour and Arlene Tankleff* (published December 2008) and *An Investigation of the Suffolk County District Attorney's Office and Police Department* (published April 1989).

    The Freedom of Information Law, while making certain agency records available for inspection or release, does not apply to records that are specifically exempted from disclosure by state or federal law (Public Officers Law §87 [2][a]).  In this case Chapter 989 of the 1958 Laws of the State of New York, which established the Temporary State Commission on Investigation, does not allow the release of the requested documentation (§5).  Chapter 989 of the Laws of 1958 specifically states that every witness attending before the SIC shall be examined privately and the SIC shall not make public the particulars of such examination (§2 [11][d]).

    Additionally, FOIL exempts from disclosure records that:

If disclosed would constitute an unwarranted invasion of personal privacy, which includes disclosure of information of a personal nature reported in confidence to an agency and not relevant to the ordinary work of such agency (Public Officers Law §87 [2][b] and §89[2][b][v]).

Are inter- or intra-agency materials which are not statistical or factual tabulations or data, instructions to staff that affect the public, or final agency policy or determinations (Public Officers Law §87 [2][g]).

WHERE HISTORY GOES ON RECORD

The New York State Archives is a program of the State Education Department.

Are compiled for law enforcement purposes and which, if disclosed, would:

Identify a confidential source or disclose confidential information relating to a criminal investigation (Public Officers Law §87 [2][e][iii]).; or
Reveal criminal investigative techniques or procedures, except routine techniques and procedures (Public Officers Law §87 [2][e][iv]).

Finally, to the extent that documentation is comprised of attorney-client privileged communications and attorney work product, such documentation is not disclosed under FOIL.

Therefore, I regret to inform you that your request is denied. If you wish to appeal this decision, you may do so within 30 days by writing to:

        Mr. David Steiner
        Commissioner of Education
        New York State Education Department
        Room 111, Education Building
        Albany, NY 12234

Sincerely,

*[signature: Jim Folts]*

James D. Folts
Head, Reference Services

FOR: Christine Ward
State Archivist and Records Access Officer

# EXHIBIT B

# NEUFELD SCHECK & BRUSTIN, LLP
99 Hudson Street
New York, New York 10013

Tel: 212-965-9081
Fax: 212-965-9084

Peter J. Neufeld
Barry C. Scheck
Nick Brustin
Debi Cornwall

Anna Benvenutti Hoffmann
Emma Freudenberger
Sarah Crowley

Johnnie L. Cochran, Jr.
(1937-2005)

April 2, 2010

**Via U.S. Mail**
Records Access Officer
New York State Archives
Cultural Education Center, Room 11A42
Albany, NY 12230

**Re:**   **Freedom of Information Law (FOIL) Request
for N.Y. State Investigation Commission (SIC) materials relating to**
*An Investigation of the Suffolk County District Attorney's Office and Police Department* **(April 1989) and**
*An Investigation into the Procedures Resulting in the Arrest and Conviction of Martin Tankleff for the Murders of Seymour and Arlene Tankleff* **(December 2008)**

To Whom It May Concern:

In furtherance of my recent conversation with Louise DeCandia, counsel for the Archives through the Department of Education, please accept this letter as a formal request pursuant to the Freedom of Information Law ("FOIL") for the opportunity to inspect and copy the records described below. These records were created or collected by the now-defunct State of New York Commission of Investigation ("SIC") and are currently maintained in the New York State Archives, as prescribed by the Laws of New York, 2008, ch. 56, pt. G, § 1 and McKinney's Arts and Cultural Affairs Law § 57.05(5).

Specifically, the law firm of Neufeld Scheck & Brustin, LLP, on behalf of our client, Martin Tankleff, requests access to the underlying files from the SIC investigations that culminated in the following two reports: *An Investigation into the Procedures Resulting in the Arrest and Conviction of Martin Tankleff for the Murders of Seymour and Arlene Tankleff*

1

(published December 2008) and *An Investigation of the Suffolk County District Attorney's Office and Police Department* (published April 1989). For each investigation, we request access to the complete file, including but not limited to:

1. Any and all transcripts of hearings held, interviews or sworn testimony transcribed, written statements taken by the SIC or any of its employees or agents, and exhibits introduced;

2. Any documents created in the course of the investigation by the SIC or any of its employees or agents, including but not limited to, statements, notes, memoranda, discussions and reports regarding employees of the Suffolk County Police Department, employees of the Suffolk County District Attorney's Office, or other individuals with knowledge related to the investigation, whether oral, audio, taped, or written;

3. Any and all documents reflecting allegations from any source that employees of the Suffolk County Police Department, specifically including but not limited to the Homicide Squad, or employees of the Suffolk County District Attorney's Office engaged in the fabrication, spoliation, destruction, and/or withholding of evidence or investigations into such allegations, whether or not the allegation was substantiated, including without limitation any charges, statements, notes, reports, memoranda or correspondence, transcripts, findings, conclusions, or recommendations made by investigating authorities, and civil, administrative, or criminal complaints originating from civilians, law enforcement, or judicial personnel;

4. Any and all documents containing allegations from any source that employees of the Suffolk County Police Department, specifically including but not limited to the Homicide Squad, or employees of the Suffolk County District Attorney's Office pressured, intimidated, abused, threatened, coerced, or made promises, rewards, or inducements to any witness, crime victim, or suspect or investigations into such allegations, whether or not the allegation was substantiated, including without limitation any charges, statements, notes, reports, memoranda or correspondence, transcripts, findings, conclusions, or recommendations made by investigating authorities, and civil, administrative, or criminal complaints originating from civilians, law enforcement, or judicial personnel;

5. Any and all documents containing allegations from any source that employees of the Suffolk County Police Department, specifically including but not limited to the Homicide Squad, or employees of the Suffolk County District Attorney's Office perjured themselves or provided false information in the course of a criminal investigation or criminal trial proceeding or investigations into such allegations, whether or not the allegation was substantiated, including without

      limitation any charges, statements, notes, reports, memoranda or correspondence, transcripts, findings, conclusions, or recommendations made by investigating authorities, and civil, administrative, or criminal complaints originating from civilians, law enforcement, or judicial personnel;

6. Any and all documents containing allegations from any source that employees of the Suffolk County Police Department, specifically including but not limited to the Homicide Squad, or employees of the Suffolk County District Attorney's Office knew or should have known of misconduct by employees of the Suffolk County Police Department in the course of a criminal investigation or criminal trial proceeding and failed to report that misconduct to the District Attorney or other appropriate Suffolk County official or investigations into such allegations, whether or not the allegation was substantiated, including without limitation any charges, statements, notes, reports, memoranda or correspondence, transcripts, findings, conclusions, or recommendations made by investigating authorities, and civil, administrative, or criminal complaints originating from civilians, law enforcement, or judicial personnel;

7. Any and all statements made by any Suffolk County official pertaining to the Suffolk County Police Department's policies, practices, customs, and procedures concerning the interrogation of suspects and witnesses, the videotaping of interrogations and/or confessions, and documentation of investigations;

8. Any and all statements made by any Suffolk County official pertaining to the Suffolk County District Attorney's Office's policies, practices, customs, and procedures concerning the interrogation of suspects and witnesses, the videotaping of interrogations and/or confessions, and documentation of investigations;

9. Any and all documents pertaining to the management structure of the Suffolk County Police Department;

10. Any and all documents pertaining to the management structure of the Suffolk County District Attorney's Office;

11. Any and all documents pertaining to any and all structures within the offices of the Suffolk County Police Department and/or the Suffolk County District Attorney's Office set up to receive, process, and investigate allegations of misconduct and to provide criticism, discipline, or remediation, or to pursue prosecution following a finding substantiating an allegation of misconduct against a Suffolk County Police Department employee or agent;

12. Any and all documents, including but not limited to any and all writings,

memoranda, transcripts, docket entries, exhibits, drawings, graphs, charts, photographs, phono records, tapes, computer files, datebooks, time sheets, logs, electronic or computerized data compilations, and any other data compilation from which information can be obtained, containing information obtained from, allegations made against, or testimony given by or regarding representatives or members of the Suffolk County Police Department's Homicide Squad or any and all of the following Suffolk County Police Department employees: Kevin James McCready, Norman Rein, Charles Kosciuk, Robert Doyle, and/or John McElhone.

Elizabeth Daniel, a paralegal in my office, has discussed this request at some length with Jim Fults and Bill Gorman since our first inquiry on January 28, 2010. I understand that these voluminous files have not yet been fully sorted or indexed since the Archives obtained them last year, but that Archives staff has begun to review them and identify responsive materials. As I mentioned in my phone call with Ms. DeCandia, we recognize the inherent burden of our request for access to these records, and will do whatever we can to help facilitate this process. For example, we would be happy to send someone from our offices to review the records and designate those documents we wish to copy, and also to arrange for a third-party vendor to pick up, scan, and return the designated documents, at our expense.

Please do not hesitate to call Elizabeth Daniel or me with any questions or concerns about this request, and thank you in advance for your attention to this matter.

Sincerely,

Deborah L. Cornwall

Cc: Louise DeCandia, Esq.
Barry Pollack, Esq. & Dawn Murphy-Johnson, Esq.
Bruce Barket, Esq.