UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MARTIN TANKLEFF,

                  Plaintiff(s),          **ORDER**
                                       CV 09-1207  (JS) (WDW)

       -against-

COUNTY OF SUFFOLK, et al.,

                  Defendant(s).
--------------------------------------------------------X
**WALL, Magistrate Judge:**

      Before the court is plaintiff Martin Tankleff's motion to compel compliance with a

subpoena served on the non-party New York Office of the Attorney General ("OAG") concerning

documents for which the OAG claims privilege.  *See* Docket Entry ("DE") [34].   The OAG

opposes the motion, and in addition to the papers submitted in direct response to the motion,

"incorporates" its January 15, 2010 letter to plaintiff's counsel, *see* DE [30-3], as part of its

opposition.  By Order dated June 24, 2010, that part of the motion concerning production of

Grand Jury minutes was denied without prejudice to renew, and plaintiff was directed to first

seek an order from the state court concerning those materials.  Order of 6/24/10, DE [53].  The

OAG was further directed to produce the non-Grand Jury materials at issue for an *in camera*

review, which it has done.  The OAG has also submitted a privilege log in connection with the

withheld materials.  Upon review of the documents and for the reasons set forth herein,

plaintiff's motion to compel production of the non-Grand Jury materials is granted to the extent

indicated below.

## BACKGROUND

      Familiarity with the subject matter of this litigation is assumed.  Plaintiff served a non-

party subpoena on the OAG seeking production of documents relating to the OAG's

investigations of the murders of Arlene and Seymour Tankleff, and to the investigation of their son, Martin, as a suspect in that crime. The OAG claims several types of privilege against production of the materials at issue, specifically, deliberative process, law enforcement, and common-law work product.[1] There is also discussion regarding the Special Prosecutor's "special need." Contrary to plaintiff's characterization, however, the OAG does not assert this as a separate privilege but rather "as a factor that should be considered in assessing the other privileges asserted." OAG Mem. at 17. Without citation to any authority, the OAG argues that "Special Prosecutors are frequently appointed by the Governor in highly charged and sensitive cases in which it is especially important to assure the confidentiality of witnesses and to encourage candor and efficiency on the investigating team." OAG Mem. at 17. As suggested by the OAG, I have considered this as another factor and not as a separate privilege.

## DISCUSSION

### I. Deliberative Process Privilege

The OAG claims that its "intra-office memoranda, e-mails and notes that preceded the determination of the OAG's ultimate position and that contain interpretations of evidence and policy considerations" are covered by the deliberative process privilege. 1/15/10 ltr. at 3. The deliberative process privilege is a qualified privilege that protects "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Tigue v. United States Dep't of Justice,* 312 F.3d 70, 76 (2d Cir. 2002). It is "designed to promote the quality of agency decisions by

---

[1]Assertion of another "privilege," privacy of law enforcement officers, concerns redaction of the police officers' addresses. Plaintiff has stated that he has no objection to the redaction of this personal information.

preserving and encouraging candid discussion between officials." *Nat'l Council of La Raza v. Dep't of Justice,* 411 F.3d 350, 356 (2d Cir. 2005). The privilege "protects the decision making processes of the executive branch of the government from discovery in civil actions." *Cruz v. Kennedy*, 1998 WL 689946, at *8 (S.D.N.Y. Sept. 30, 1998). It should be invoked "only in the context of communications designed to directly contribute to the formulation of important public policy." *Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York,* 194 F.R.D. 88, 95 (S.D.N.Y. 2000).

To be protected, the document must be both (1) predecisional and (2) deliberative. To be "predecisional," the document must be prepared to assist a decisionmaker in arriving at his decision, not a postdecisional document that states why the decision was made. It does not protect factual observations, findings or conclusions. A document is predecisional "if the agency can '(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates.'" *Tummino v. Von Eschenbach,* 2006 U.S. Dist. LEXIS 81286, at *24 (E.D.N.Y. Nov. 6, 2006) (quoting *Nat'l Cong. for Puerto Rican Rights,* 194 F.R.D. at 92) (additional citations omitted).

In addition, the document must be deliberative, "that is, 'actually related to the process by which policies are actually formulated.'" *Hopkins v. United States Dep't of Hous. & Urban Dev.,* 929 F.2d 81, 84 (2d Cir. 1991)(quoting *Jordan v. United States Dep't of Justice,* 591 F.2d 753, 774 (D.C. Cir. 1978)). The privilege "does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented

judgment." *Tigue,* 312 F.3d at 80 (quoting *Grand Cent. P'ship, Inc. v. Cuomo,* 166 F.3d 473, 482 (2d Cir. 1999)).

Finally, "the deliberative process privilege is qualified; it may be overcome by a showing of need, which is determined on a case by case basis." *In re Grand Jury Subpoena Dated Aug. 9, 2000,* 218 F. Supp. 2d 544, 553 (S.D.N.Y. 2002). Indeed, the "deliberative process privilege has even been called discretionary." *Id.* As a qualified privilege, the court must weigh "'(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.'" *Rodriguez v. Pataki,* 280 F. Supp. 2d 89, 100-01 (S.D.N.Y.), *aff'd* 293 F. Supp. 2d 302 (S.D.N.Y. 2003) (*quoting In re Franklin Nat'l Bank Secs. Litig.,* 478 F. Supp. 577, 583 (E.D.N.Y. 1979)).

The OAG claims that in light of the "serious law enforcement issues" and the "substantial attention the Tankleff case received both before and after his convictions were vacated," the OAG "reasonably regarded their work to be of great importance to future public policy in the State." OAG Mem. at 10. This seems to raise the question of whether the internal ruminations of the OAG on a single, albeit notorious, investigation can constitute "formulation of public policy." OAG has not addressed the 'policy' aspect of the privilege, and plaintiff discussed it only briefly on reply; neither party has cited a case analogous to a situation such as the one here.

The court finds some similarity in a case involving the need to protect the confidentiality of a prosecutor's decisionmaking in death penalty cases. *See, e.g., United States v. Frank,* 8 F. Supp. 2d 253 (S.D.N.Y. 1998). In *Frank,* the court denied production of the "Death Penalty

Evaluation" form prepared by the U.S. Attorney as there "are strong policy reasons in favor of keeping confidential the internal deliberative process through which the Government decides whether to use its prosecutorial power to seek the most severe punishment possible" and "[d]iscovery of the deliberative materials would have a chilling effect on the thorough evaluation of these issues and hinder the just, frank, and fair review of the decision for every individual defendant who faces the prospect of receiving a Notice of Intent to Seek the Death Penalty." *Id.* at 284. Applying the same rationale to a single "high profile" case, however, would be a significant expansion of the law and is not warranted.

"The burden of justifying application of the privilege rests with the party asserting it." *Pearson v. City of New York,* 2009 WL 3247433, at *2 (E.D.N.Y. Oct. 6, 2009) (*citing Von Bulow v. Von Bulow,* 811 F.2d 136, 144 (2d Cir. 1987)). Simply put, the OAG has not satisfied that burden. Even assuming that it did demonstrate that application of the deliberative process privilege is warranted, that privilege is qualified. Weighing the competing interests for and against disclosure, I find that plaintiff's need for the materials outweighs any claim to a deliberative process privilege.

## II. Common Law Work Product

There is no dispute that the OAG, a non-party to this litigation, cannot claim work product under Rule 26(b)(3) of the Federal Rules of Civil Procedure as that Rule only applies to documents prepared "by or for another party or its representative" and "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26 (b)(3)(A) & (B). Instead, the OAG seeks protection under the "common-law work-product doctrine." Under such a theory, "[c]ourts have extended to non-

parties the work product protection afforded to parties by the Rule where it is necessary to achieve the underlying purposes of the doctrine." *Gonzalez v. City of New York,* 2009 WL 2253118, at * 3 (E.D.N.Y. Jul. 28, 2009) (citations omitted). That purpose is to "create a 'zone of privacy' that allows an attorney to prepare for litigation 'free from unnecessary intrusion by his adversaries.'" *Id.* (quoting *United States v. Adlman,* 134 F.3d 1194, 1196 (2d Cir. 1998) (citing *Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947))). Work product protection may be afforded to non-parties if disclosure would "(1) alter attorney behavior, (2) reward sloth, or (3) interfere with ongoing litigation." *Haus v. City of New York,* 2006 WL 3375395, at *3 (S.D.N.Y. Nov. 17, 2006) (citing *Abdell v. City of New York,* 2006 WL 2664313, at *4 (S.D.N.Y. Sept. 14, 2006)).

There are two types of work product – ordinary or fact, and opinion. "[O]pinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' and is entitled to greater protection than fact work product." *In re Grand Jury Subpoena Dated July 6, 2005,* 510 F.3d 180, 183 (2d Cir. 2007) (quoting *Adlman,* 134 F.3d at 1197). The party asserting the privilege to protect opinion work product must show "a real, rather than speculative, concern" that the work product will reveal counsel's thought processes "in relation to pending or anticipated litigation." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002,* 318 F.3d 379, 386 (2d Cir. 2003) (quoting *Gould, Inc. v. Mitsui Mining & Smelting Co.,* 825 F.2d 676, 680 (2d Cir.1987)).

Plaintiff and the OAG disagree about the breadth of the availability of the common law work product privilege. Plaintiff argues, citing *Gonzalez,* that the OAG must first demonstrate that application of the privilege is necessary to achieve the underlying purposes of the doctrine –

6

creation of a zone of privacy to allow for litigation preparation free from intrusion *by his adversaries,* Pl.'s Mem. at 8 (emphasis in original).  The OAG argues that it need only establish that disclosure would alter attorney behavior.  Plaintiff and the OAG disagree on whether, under *Gonzalez,* there must be an adversarial relationship before the work product privilege attaches.  Neither party, however, addresses the fact that the *Gonzalez* court required a showing that the documents in question be prepared in anticipation of litigation or for trial.  *Gonzalez,* 2009 WL 2253118, at *4.  That court concluded that  "work product protection does not appear to be applicable to the documents at issue *because they were not prepared in anticipation of litigation or for trial*." *Id.* (emphasis added)).  Thus, the question is not whether the OAG had an adversarial relationship with plaintiff, but rather whether the materials were prepared "in anticipation of litigation."

The OAG was directed to "investigate the alleged commission of any indictable offence or offenses in violation of the law relating to the death of Arlene Tankleff ... or ... Seymour Tankleff . . . and to prosecute the person or persons believed to have committed the same and any crime or offense arising out of such investigation. . ."  Exec. Order of 1/11/08, 9 N.Y.C.R.R. §6.21, Sugarman Aff. Ex. A, DE [34-8].  The documents at issue were prepared by the OAG during its investigation, which culminated in the OAG's motion "for the dismissal of Tankleff's indictments in the interest of justice."  OAG Mem. at 3.  The OAG argues that the "mental impressions" of its attorneys were made at a time when a re-trial of plaintiff was an option and thus may have been in anticipation litigation.  It also argues that production would alter attorney behavior since its staff "would be more hesitant about committing its impressions to paper if disclosure of such notes and communications were a real threat."  1/15/10 ltr at 4.

The OAG's argument raises an interesting question – Does the determination of work product privilege as to materials created during an investigation on whether or not to prosecute rely solely upon the ultimate decision regarding prosecution? The current case law does not provide much guidance. In one case, the court stated that "[t]he reason for declining to prosecute has nothing to do with 'strategic litigation planning' and disclosing the reason does not permit the plaintiff to 'piggyback' on an adversary's preparation." *Howell v. City of New York,* 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) (denying motion for a protective order under Rule 26(b)(3)). The issue was ultimately left undecided when the court ordered more briefing, and the case apparently settled prior to resolution of the question.

The OAG's position requires an analysis of the purpose of a document's creation from the perspective of the ultimate prosecutorial decision. A determination of whether a document was prepared in anticipation cannot be made using hindsight. As the documents were not created in anticipation of litigation, the common law work product privilege does not apply and the materials must be produced.

## III. Law Enforcement Privilege

"The purpose of the law enforcement privilege is to 'prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference with an investigation.'" *Nat'l Cong. for Puerto Rican Rights,* 194 F.R.D. at 93 (*quoting In re Dep't of Investigation of the City of New York,* 856 F.2d 481, 484 (2d Cir.1988)). The investigation need not be ongoing. The law enforcement privilege may apply if the agency's ability to conduct future investigations may be

seriously impaired if certain information is revealed, or where disclosure of law enforcement techniques and protocols would jeopardize future criminal investigations. *MacNamara v. City of New York,* 249 F.R.D. 70, 79 (S.D.N.Y. 2008); *Nat'l Cong. for Puerto Rican Rights,* 194 F.R.D. at 95. The law enforcement privilege is also qualified, and thus the public interest in nondisclosure must be balanced against the need of the particular plaintiff for access to the information. *See United States v. United States Currency in Sum of Twenty One Thousand Nine Hundred Dollars,* 1999 WL 993721, at *2 (E.D.N.Y. Sept. 21, 1999) (citations omitted).

Plaintiff claims that the OAG has not identified the harm that would result from disclosure, arguing that the OAG must meet a "substantial threshold showing that there are specific harms likely to accrue from disclosure of specific materials." *MacNamara,* 249 F.R.D. at 85. The OAG claims this privilege for "internal documents, such as notes, outlines and lists, as well as correspondence with outside consultants, that reveal the investigative techniques and procedures used by [the OAG] and disclose an interview with a federal confidential informant." 1/15/10 ltr. at 4. It also claims that "[i]nformation about the inner workings of the police laboratory could also jeopardize future investigations." OAG Mem. at 15. It does not identify what information specifically would potentially impact future cases except to suggest that documents that identify personnel in the State police laboratory "could also cause damage to future investigations if it fell into the wrong hands." Sugarman Aff. at ¶13. With the exception of the identity of confidential informants, if such information exists, the OAG has not identified specific harms that would result from production of the materials.

Upon review of the documents and the relevant case law, I find that plaintiff's need for the materials outweighs the non-specific harm raised by the OAG. As production is not

prevented by assertion of the law enforcement privilege, plaintiff's motion to compel is granted. The OAG may redact the identity of the confidential informant prior to production.

## IV. Confidentiality of Medical and Psychiatric Information

Finally, the OAG claims it is unable to produce four documents because of restrictions imposed by the Health Insurance Portability and Accountability Act ("HIPAA") and state law. Two of the four are also Grand Jury materials and thus the question of production of those documents is not currently before me. The two documents ripe for decision are a document that indicates what Medicaid facilities provided Drug Rehabilitation services to three individuals (AGP 1566-68), and a sex offender evaluation of a fourth individual prepared by the Office of Mental Health (AGP 1287-1305). The Medicaid information pertains to individuals who plaintiff alleges may have participated in, or have specific information about, the murder of his parents. *See* Complaint ¶¶125-28. Plaintiff argues that the information may be relevant to the credibility of these witnesses as it may go to their capacity to observe or remember, as well as their prior bad acts.

HIPAA does not apply to the list of Medicaid facilities, according to plaintiff, since the OAG is not a "covered entity" defined by the Act as a health plan, health care clearinghouse, or health care provider. The OAG claims that it received the document from the State Department of Correctional Services, which is a "covered entity" under HIPAA, and that the OAG may not further disclose the document "except as permitted by HIPAA and the applicable State restrictions." Sugarman Aff. at ¶15. The OAG does not assert any privilege as to the contents of the document or claim that it is not relevant, it only says it cannot respond to the subpoena unless one of the circumstances allowing for disclosure under HIPAA is satisfied. One such

circumstance is the issuance of a court order directing the disclosure. *See* 45 C.F.R. §164.512 (e)(1)(i).

HIPAA also provides that documents may be produced subject to a qualified protective order. *See* 45 C.F.R. §164.512 (e)(1)(v)(A) & (B). I find that the concerns expressed by the OAG as to its obligations under HIPAA may be met by an order directing the production, and entry of a protective order as to the use of those documents. Accordingly, plaintiff's motion to compel production is granted, subject to a qualified protective order. The parties are prohibited from using or disclosing the documents for any purpose other than use in this litigation, and at the conclusion of this litigation, the documents (including all copies made) shall either be returned to the OAG, or destroyed and an affidavit regarding the destruction provided to the OAG.

In addition, the OAG claims that it has withheld the sexual offender evaluation pursuant to New York Mental Hygiene Law §§10.08(a) and 33.13(c), as it is standard practice for the OAG to treat this material as confidential, Sugarman Aff. at ¶16, and the OAG "routinely respects such confidentiality." OAG Mem. at 16. Like the HIPAA materials, however, the OAG does not argue that the document lacks relevance and suggests that it may produce it pursuant to a court order. Accordingly, the document will be produced and, given its sensitive nature, it too will be subject to the protective order set forth *supra*.

## CONCLUSION

The plaintiff's motion to compel is granted. Any documents containing personal information of law enforcement personnel or the identity of a confidential informant shall be

redacted as to that information.  The remaining documents shall be produced as discussed above.

This production shall be completed **by April 12, 2011.**


Dated: Central Islip, New York         **SO ORDERED:**
      March 29, 2011


  /s/ William D. Wall          
WILLIAM D. WALL
United States Magistrate Judge