```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MARTIN TANKLEFF,
                    Plaintiff,              MEMORANDUM & ORDER
                                             09-CV-1207(JS)(WDW)
        -against-

THE COUNTY OF SUFFOLK, K. JAMES
McCREADY, NORMAN REIN, CHARLES
KOSCIUK, ROBERT DOYLE, JOHN MCELHONE,
JOHN DOE POLICE OFFICERS #1-10, RICHARD
ROE SUFFOLK EMPLOYEES #1-10,

                    Defendants.
----------------------------------------X
APPEARANCES:
For Plaintiff:      Barry C. Scheck, Esq.
                    Deborah L. Cornwall, Esq.
                    Emma Kate Freudenberger, Esq.
                    Neufeld Scheck & Brustin, LLP
                    99 Hudson Street, 8th Floor
                    New York, NY 10013

                    Bruce A. Barket, Esq.
                    Quadrino Schwartz
                    666 Old Country Road, 9th Floor
                    Garden City, NY 11530

                    Barry J. Pollack, Esq.
                    Miller & Chevalier Chartered
                    655 Fifteenth Street, NW Suite 900
                    Washington, DC 20005

For Defendants:     Richard T. Dunne, Esq.
                    Brian C. Mitchell, Esq.
                    Susan A. Flynn, Esq.
                    Suffolk County Department of Law
                    H. Lee Dennison Building
                    100 Veterans Memorial Highway
                    Hauppauge, NY 11788

For Nonparty        Donald Nowve, Esq.
N.Y.S. Attorney     John M. Schwartz, Esq.
General:            Office of the Attorney General
                    120 Broadway
                    New York, NY 10271
```

SEYBERT, District Judge:

Pending before the Court are the New York State's Office of the Attorney General's (the "OAG") Objections to Magistrate Judge William D. Wall's order compelling it to produce certain documents that it argues are protected by the attorney work product doctrine. In his March 29, 2011 decision (the "Discovery Order"), Judge Wall ruled, among other things, that the documents in question were not work product because they were not created in anticipation of litigation. For the following reasons, the OAG's Objections are sustained and the Discovery Order is vacated in part.

## BACKGROUND

The Court presumes the reader's familiarity with the facts and posture of this case and only sets forth the facts necessary to give context to the discussion that follows. As is relevant here, the New York State Appellate Division vacated Martin Tankleff's ("Plaintiff") convictions for killing his parents, Seymour and Arlene Tankleff. The Suffolk County District Attorney recused himself from further involvement in the case, so then-Governor Eliot Spitzer appointed the OAG to investigate the Tankleff murders and prosecute anyone that it determined committed these crimes. Eliot Spitzer, Executive Order Dated Jan. 11, 2008, 9 N.Y.C.R.R. § 6.21. The OAG

investigated the case and ultimately moved to dismiss the indictments pending against Plaintiff. It has not prosecuted anyone else for the Tankleff murders, and its investigation is apparently closed. (See Docket Entry 34-5, 1/15/10 Ltr. from the OAG to Plaintiff's counsel.)

In the course of this civil action, Plaintiff sought documents from the OAG related to its investigation. The OAG resisted producing certain documents by asserting several different privileges. In his Discovery Order, Judge Wall rejected many of the OAG's arguments and ordered it to produce all of the disputed documents except for certain materials related to the grand jury. The OAG complied with the Discovery Order except to the extent that it ordered production of documents the OAG believes are protected by the attorney work product doctrine. It withheld thirty-six documents (the "Withheld Documents") and filed these Objections.

The Court has examined the Withheld Documents in camera and agrees with the OAG that, to the extent the documents are entitled to any type of work product protection, they are properly considered "core" or "opinion," as opposed to "fact," work product. See In re Grand Jury Proceedings, 219 F.3d 175, 190 (2d Cir. 2000) (describing opinion work product as material setting forth the "mental impressions, conclusions, opinions, or legal theories of an attorney"); see also FED. R. CIV. P.

3

26(b)(3)(B).

## DISCUSSION

The issue in this case is whether the OAG, a nonparty, may invoke the attorney work product doctrine to avoid producing the Withheld Documents. In the course of resolving this question, the Court must decide whether Judge Wall's Discovery Order, in which he concluded that the documents were not created in anticipation of litigation, was contrary to law. The Court will address that issue below, but it first turns to the threshold question of whether the OAG, as a nonparty, may assert the work product doctrine in this case.

### I. The Common Law Work Product Doctrine

"The attorney work product privilege protects 'the files and the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways' prepared in anticipation of litigation." A. Michael's Piano, Inc. v. F.T.C., 18 F.3d 138, 146 (2d Cir. 1994) (quoting Hickman v. Taylor, 329 U.S. 495, 510-11, 67 S. Ct. 385, 393, 91 L. Ed. 451 (1947)). The doctrine creates "a 'zone of privacy' that allows an attorney to prepare for litigation 'free from unnecessary intrusion by his adversaries.'" Gonzalez v. City of N.Y., No. 08-CV-2699, 2009 WL 2253118, at *3 (E.D.N.Y. July 28, 2009) (quoting United States

v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998)).  The doctrine is partly codified by Federal Rule of Civil Procedure 26(b)(3), but there is no dispute that the OAG, as a nonparty, may not invoke Rule 26.  (Discovery Order 6.)

The OAG instead relies on the broader common law work product doctrine, which extends to nonparties to the degree necessary to achieve the three underlying purposes of the doctrine.  See, e.g., Jean v. City of N.Y., No. 09-CV-0801, 2010 WL 148420, at *2 (E.D.N.Y. Jan. 12, 2010); cf. Abdell v. City of N.Y., No. 05-CV-8453, 2006 WL 2664313, at *4 (S.D.N.Y. Sept. 14, 2006).  Work product protection is appropriate where disclosure would "(1) alter attorney behavior, (2) reward sloth, or (3) interfere with ongoing litigation."  Haus v. City of New York, No. 03-CV-4915, 2006 WL 3375395, at *3 (S.D.N.Y. Nov. 17, 2006) (citing Abdell, 2006 WL 2664313, at *4).  Additionally, at least one court in this Circuit has suggested that, given the high degree of protection afforded "opinion" work product, nonparties ought to be able to invoke the work product doctrine even where protection for "fact" work product would not otherwise be justified.  See Abdell, 2006 WL 2664313, at *4-6; see also Crosby v. City of N.Y., 269 F.R.D. 267, 278 (S.D.N.Y. 2010); Jean, 2010 WL 148420, at *2.  Judge Wall did not decide whether the work product doctrine extends to the OAG because he concluded that the Withheld Documents were not created in

anticipation of litigation and thus not eligible for work product status in any event.

In this case, the OAG may invoke the common law work product doctrine because non-disclosure would promote the first and third objectives of the work product doctrine and because the materials to be protected are squarely "core" work product. Requiring disclosure could have a chilling effect on when and how OAG attorneys commit their thoughts to paper. (See NYAG Br. 2.) Plaintiff argues that this concern is irrelevant because disclosure in this case would not erode the "zone of privacy" that shields a lawyer's work from his adversary. (Pl. Opp. 8.) In other words, the doctrine should not apply because Plaintiff and the OAG are not adversaries in this litigation. The Court disagrees that work product protection is only available to parties with an adversarial relationship with the party seeking disclosure, a point that is implicit in several decisions in which courts have extended work product protection to nonparties. See Jean, 2010 WL 148420, at *3 (extending work product protection to district attorney's office); Abdell, 2006 WL 2664313, at *7 (permitting district attorney to redact notations reflecting assistant district attorneys' mental impressions). Extending work product protection to the OAG is also sensible in light of the doctrine's third goal. Although the OAG does not anticipate prosecuting anyone for the Tankleff

murders, there exists the possibility that it may one day develop evidence to pursue a case against suspects other than the Plaintiff. Disclosure of the Withheld Documents would disrupt that eventual prosecution. Further, the Court's decision is in accord with courts that have recognized that a nonparty's "core" work product may be protected even where its "fact" work product is not. See Abdell, 2006 WL 2664313, at *7 (permitting redactions of notations that reflected lawyers' impressions despite finding that the work product doctrine did not apply to district attorney's fact work product).

II. In Anticipation of Litigation

Having concluded that the work product doctrine is available to the OAG, the next issue is whether Judge Wall's decision that the withheld documents were not created in anticipation of litigation was contrary to law. Judge Wall found that because the OAG was tasked not only with prosecuting but also with investigating the Tankleff murders, and because its investigation eventually resulted in a motion to dismiss Plaintiff's indictments, the OAG's documents were not created in anticipation of litigation. (Discovery Order at 7-8.)

The Court may disturb a Magistrate Judge's ruling in a non-dispositive matter only if it finds that the ruling was "clearly erroneous or contrary to law." E.g., Aboeid v. Saudi Arabian Airlines Corp., No. 10-CV-2518, 2011 WL 5117733, at *1

(E.D.N.Y. Sept. 6, 2011). A ruling is "clearly erroneous" if the Court, after considering all of the evidence before it, "is left with the definite and firm conviction that a mistake has been committed." Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers Ltd., 190 F.3d 64, 67 (2d Cir. 1999) (quoting Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)). Under the "contrary to law" standard, the Court can reverse the decision "only if it finds that the magistrate fail[ed] to apply or misapplie[d] relevant statutes, case law or rules of procedure." Aboeid, 2011 WL 5117733, at *2 (citations and quotation marks omitted).

The Court agrees with the OAG that, for the purposes of the work product privilege, the Withheld Documents were created "in anticipation of litigation." "The courts have taken a flexible approach in determining whether the work product doctrine is applicable, asking not whether litigation was a certainty, but whether the document was created 'with an eye toward litigation.'" A. Michael's Piano, Inc., 18 F.3d at 146-47 (quoting Hickman, 329 U.S. at 511). Although the mere possibility of future litigation is insufficient to invoke the privilege, Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 73 (S.D.N.Y. 2010), the party seeking protection need only show that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be

said to have been prepared or obtained <u>because of</u> the prospect of litigation." United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998) ["Adlman II"] (quotation marks omitted) (emphasis in original). The Withheld Documents meet this test.

The materials prepared in connection with the OAG's investigation and potential prosecution of the Tankleffs' killer or killers were made "because of the prospect" of further prosecutions--namely, the potential re-trial of Plaintiff or the trial of new suspects. The executive order appointing the OAG to the case--but for there would be no documents--explicitly described the OAG's prosecutorial function: the OAG was directed to "investigate the alleged commission of any indictable offense or offenses" in relation to the Tankleff murders and "prosecute the person or persons believed to have committed" the crimes. Eliot Spitzer, Executive Order Dated Jan. 11, 2008, 9 N.Y.C.R.R. § 6.21.

The Court is not persuaded by Plaintiff's argument that the Withheld Documents are not work product because they were made in the course of deciding <u>whether</u> to re-try Plaintiff, not <u>because</u> it was going to re-try Plaintiff. (Pl. Opp. 5.) Courts have generally interpreted "in anticipation of litigation" broadly, Complex Systems, Inc. v. ABN AMRO Bank N.V., No. 08-CV-7497, 2011 WL 5126993, at *4 (S.D.N.Y. Oct. 26, 2011), and the fine line Plaintiff attempts to draw is not

9

supported by caselaw. Rather, courts speak of a distinction between materials prepared in anticipation of litigation and those "prepared in the ordinary course of business." E.g., Adlman II, 134 F.3d at 1202; Univ. Sports Publ'ns Co., Inc. v. Playmakers Media Co., No. 09-CV-8206, 2011 WL 1143005, at *6 (S.D.N.Y. Mar. 21, 2011) (quoting Allied Irish Banks v. Bank of Am., N.A., 240 F.R.D. 96, 106 (S.D.N.Y. 2007)). Here, special circumstances led to the OAG's taking over the case; its documents were clearly not created in the ordinary course of its business. Moreover, the Second Circuit has said, albeit under slightly different circumstances, that materials prepared by attorney investigators who believe that the case may never result in litigation are nevertheless protected work product. In that case, A. Michael's Piano, Inc. v. F.T.C., the Second Circuit considered whether documents prepared after a Federal Trade Commission staff attorney recommended that an investigation be closed fell within the work product exemption to the Freedom of Information Act. 18 F.3d 138, 146-47 (2d Cir. 1994). The court explained:

> Here the FTC investigation was not closed at the time the documents at issue were created, and the fact that staff members may have thought that litigation might not ever occur does not take the documents out of the scope of those materials exempt because they were created in anticipation of litigation. Instead, the reports and recommended action with respect to the status of an

10

> investigation submitted before any final decision is made as to the course an investigation qualify as documents prepared in anticipation of litigation.

Id. It follows then, that the OAG documents created before it moved to dismiss Plaintiff's indictments qualify for work product protection.

The cases cited in the Discovery Order do not help Plaintiff's cause. In Gonzalez, the court determined that the documents at issue were prepared after criminal charges had been dismissed. 2009 WL 2253118, at *3. Similarly, in Howell, the document in question was a form prepared in connection with the District Attorney's decision not to prosecute. As the court noted, the document was prepared "precisely because there would be no litigation or trial." 2007 WL 2815738, at *1. By contrast, the Withheld Documents were prepared while the OAG was still contemplating whether and how to prosecute Plaintiff and before a final decision was made not to press its case forward. Accordingly, they are eligible for work product protection. See A. Michael's Piano, Inc., 18 F.3d at 146-47.

III. Plaintiff Cannot Overcome Presumption Against Disclosure

The work product privilege is a qualified privilege that may be overcome if the party seeking disclosure can, in the case of "opinion" work product, make a highly persuasive showing of need. In re Grand Jury Proceedings, 219 F.3d 175, 192 (2d

11

Cir. 2000). Some courts have described the protection afforded "opinion" work product as "absolute" or "near absolute." Jean, 2010 WL 148420, at *2. Plaintiff has not overcome the strong presumption against disclosure. Relying largely on the more lenient "substantial need" standard (Pl. Opp. 10), Plaintiff essentially argues that the Withheld Documents contain relevant facts that Plaintiff cannot obtain elsewhere (id. at 10-11). See, e.g., Jean, 2010 WL 148420, at *2 (noting the more lenient "substantial need" standard). But the OAG has already produced its "fact" work product (OAG Reply 11), and Plaintiff has not offered a persuasive case why it is entitled to the mental impressions, opinions, or legal theories of counsel. In re Grand Jury Proceedings, 219 F.3d 175, 190 (2d Cir. 2000).

## CONCLUSION

For the foregoing reasons, the OAG's Objections are sustained and the Discovery Order is VACATED to the extent it compels the OAG to produce the Withheld Documents.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: November __22__, 2011
Central Islip, New York