# Exhibit 5-5

**RECOMMENDATIONS**

A.   **Mr. Henry's   Successor   Must   Take   Strong,**
     **Positive Steps to Reform and Effectively Lead**
     **the District Attorney's Office**

On March 14, 1989, Patrick Henry announced
that he would not seek re-election to the Office of
Suffolk County District Attorney, a position he will
have held for 12 years.   In November of this year his
successor will be elected by the voters of Suffolk
County.   The Commission is certain that person will
want to bring honor to this Office.   Good intentions,
though, will not be enough.   Mr. Henry's successor also
will have to confront and take heed of the repeated
criticisms, from many responsible sources, of Suffolk
law enforcement.

While this Report has pointed out serious
misconduct by a few of Mr. Henry's assistants, includ-
ing some of his highest-ranking assistants, the Commis-
sion is confident that the great majority of attorneys
who have served under Mr. Henry are persons of dedica-
tion, integrity and ability.   At the same time, as this
and earlier criticisms of Suffolk law enforcement have
observed, there is a fully documented record of miscon-
duct and toleration for misconduct on the part of cer-
tain members of the Suffolk County District Attorney's
Office which has disserved the cause of justice and the

-180-

people of Suffolk County. This cannot be allowed to continue.

In a district attorney personal honesty and integrity are not enough. The new district attorney will have to set the tone of how the People's business is to be conducted, be vigilant with respect to misconduct in law enforcement, and set the example of what is expected of assistant district attorneys: integrity, strength of character, discipline, and the capability to develop technical competence in these assigned positions.

The observations and commentaries in this recommendation, although general in nature, are central to achieving the reforms needed in Suffolk County law enforcement. That reform must begin at the very top of the Office of the District Attorney.

### B.   Illegal Wiretapping

#### 1.   Criminal Referrals

Criminal referrals with respect to illegal wiretapping, in violation of Penal Law §250.05, and perjured testimony involving those offenses pursuant to Penal Law §210.00ff, will be made to an appropriate prosecutor. Due to the tolling provisions of CPL

30.10(3)(b) regarding public employees, the State stat-
ute of limitations on these offenses has not run.

### 2. Changes in Management Procedures in the Use of Pen Registers and Electronic Surveillance

Police management must exercise greater
supervision over personnel involved in the use of pen
registers and electronic surveillance. This should
include greater caution in the location of operations,
more frequent unannounced inspections of plants, review
of all applications and orders, review of all case
files, better control over wiretap and pen register
equipment, including appropriate receipts and inventor-
ies, and management trained to detect and understand
violations of eavesdropping orders and procedures.

## C. Employee Misconduct

### 1. Changes in Suffolk County Disciplinary Procedures

a)   The Commission recommends that the Suf-
folk County Human Rights Commission be given subpoena
power and the power to investigate complaints made to
it of undue force by police officers.

b)   The Suffolk County "Whistleblower" Law
(Local Law No. 26-1979) should be amended to broaden
the list contained in Section 3(A) of persons to whom

protected complaints can be made. The list currently contains only County officials. The list should be broadened to include State and federal officials, agencies and commissions, including federal prosecutors.

> ### 2. Reforming Suffolk County's Contract with the Patrolmen's Benevolent Association

In the collective bargaining process, Suffolk County should consider seeking the following changes in its contract with the Patrolmen's Benevolent Association:

a) The Patrolmen's Benevolent Association contract currently permits arbitration for disciplinary infractions at the option of the officer (PBA contract, p. 44). The power to discipline belongs in the hands of top management, not in the hands of outside arbitrators. There should be no compromise in dealing with misconduct by law enforcement personnel. This section should be considered for elimination in the next round of contract negotiations.

b) The PBA contract currently imposes an 18-month statute of limitations on disciplinary actions against police misconduct (PBA Contract, p. 43). Such limitation, like Section 75(4) of the Civil Service Law, should not apply where the misconduct complained

-183-

of and described in the charges would, if proved in a court of appropriate jurisdiction, constitute a crime.

### 3.   Change in Suffolk County Police Department Rules and Procedures

The procedures for handling misconduct complaints through "Command Discipline" (Suffolk County Police Department Rules and Procedures §5/6.0) must be more specifically defined to prevent serious complaints from being investigated at the precinct level (see, for example, Rules and Procedures, §5/6.4DD, 6.5F, 6.5G), and the complaints and results should be forwarded to the Internal Affairs Division and not expunged (see Rules and Procedures, §5/6.31).

### 4.   Reporting Allegations of Employee Misconduct to the Suffolk County Police and District Attorney

The District Attorney should inform the Police Commissioner or the Police Internal Affairs Division of all allegations of misconduct involving a police officer. The standard of proof in a criminal prosecution, i.e., "beyond a reasonable doubt," is much higher than the standard of proof applicable to disciplinary proceedings. Conversely, the Police Department should report to the District Attorney's Office suspected misconduct by employees of the District

-184-

Attorney's Office. In addition, the Police Department should also be required to report to the District Attorney's Office instances of police misconduct which involve possible criminal conduct.

### 5. Suffolk County Police Internal Affairs Division Investigations

The Commission believes that the Suffolk County Police Department dragged its feet and delayed (or never began) a number of Internal Affairs Division investigations during the course of the Commission's investigation in order to avoid unfavorable publicity, embarrassment and further criticism. However, since his appointment, Commissioner Guido has taken steps to complete investigations and resolve existing complaints. The Commission commends those efforts and urges that delay and avoidance of Internal Affairs investigations not be repeated in the future.

### 6. Investigations of Employee Misconduct by the Suffolk County District Attorney's Office

Investigations of employee misconduct by the Suffolk County District Attorney's Office should be fully documented, and the documentation should be maintained in the personnel files of employees investigated for misconduct.

**D.** **Changes in Management Procedures**

Throughout this Report management failures in
homicide, narcotics, wiretapping and misconduct cases
have been documented in detail, often followed by spe-
cific remedies suggested by the Commission. Therefore,
recommendations will not be offered here for every one
of the dozens of management failures discovered, but
rather the recommendations will respond to some per-
vasive and serious problems which may not yet have been
adequately addressed by the Department.

1. The Rules and Procedures of the Suffolk
County Police Department have not unequivocally
required detectives to prepare and retain memo books.
Section 9/4.13 of the Suffolk County Police Department
Rules and Procedures states:

> Police Officers assigned to any
> precinct command, the Barrier Beach
> Section of the Marine Bureau, the
> Marine Bureau when on shore assign-
> ment, the Highway Patrol Bureau and
> the Special Patrol Bureau, will
> maintain a Memorandum Book to re-
> cord all activities, duties and
> actions performed by them except
> when assigned to administrative
> duties or other non-enforcement,
> non-patrol duties. The Memorandum
> Book is submitted to the supervis-
> ing officer for certification and
> is to be produced when required by
> the Police Commissioner, by Court
> order, or for inspection by a

> superior officer. Memorandum Books and inserts are provided by the Department and are to be preserved by the individual officer for future reference.

This section should be amended to clearly mandate that all detectives are required to keep and retain memo books. Furthermore, this section and other regulations on report writing and documentation by police personnel should be enforced by appropriate supervisory action.

2. The Commission strongly supports the expressed desire of Commissioner Guido to improve training for personnel.

3. A more clearly defined career path system for police personnel must be developed.

4. Police management should exercise caution in allowing personnel to remain for lengthy periods in narcotics assignments. Keeping even effective officers in the Narcotics Division for extended periods is not a desirable practice.

-187-

5.   Management of both the Medical Examiner's Office and the Police Department must insure that responsibilities and command at homicide scenes are clearly understood and followed by all personnel.   (See Suffolk County Charter and Suffolk County Police Department Rules and Procedures §14/3.0.)

6.   The use of informants by police personnel must be regularly reviewed by higher authority and informant cards must be kept in an up-to-date and accurate fashion, permitting auditing and review.

E.   **Amendment of County Law §701**

In New York State there are two methods by which a special prosecutor is appointed.  Executive Law §63 provides that the Attorney General, at the request of the Governor or certain other State officials, or in certain statutorily defined situations, can serve as or appoint a special prosecutor.  County Law §701 provides that:

> Whenever the district attorney of any county. . . shall not be in attendance at a term of any court of record. . . or is disqualified from acting in a particular case to discharge his duties at a term of any court, a superior criminal court in the county wherein the

-188-

> action is triable may, by order
> appoint some attorney at law having
> an office in or residing in the
> county, to act as special district
> attorney. . . .

The principal problem with County Law §701 is that the appointment process involving a special district attorney in cases of disqualification is too parochial (see Chapter VII (B) quoting the Grand Jury Report in the Tawana Brawley case). To further insulate cases from conflicts, in cases of disqualification, special district attorneys should be appointed by the Presiding Justice of the Appellate Division for the department which includes the county in which the matter will be heard, and the special district attorney should not have to reside or have an office in that county, as the statute now requires.

Furthermore, the statute should provide for removal by the appointing court or justice only for cause, and provide more specifically for staffing and compensation in a way to minimize conflicts (see Appendix B for model statute).*

---

* Additional problems regarding prosecutors appointed pursuant to County Law §701 which the Legislature may wish to address have been demonstrated recently in two cases in New York. In one case the Rensselaer

(Footnote continued on next page)

**F.    Referrals to the Grievance Committee for the 10th Judicial District**

1.    The behavior of Barry Feldman and Steven Wilutis in allowing the perjured testimony of Ira Dubey to go uncorrected (see Chapter V(A)) will be referred for possible violation of DR7-102(B)(2) of the Code of Professional Responsibility, which demands that "a law-yer who receives information clearly establishing that . . . a person other than his client has perpetrated a fraud upon a tribunal shall promptly reveal the fraud to the tribunal." (Both Feldman and Wilutis have left the District Attorney's Office.)

2.    David Woycik's behavior in offering fees to police officers to refer cases (see Chapter V(B))

---

(Footnote continued from previous page)

County Attorney declined to defend a civil lawsuit brought by an accused against a special district attorney and denied any County liability for the acts of the special district attorney (New York Law Journal, 3/7/89, p. 1, col. 4). In another case, People v. Leahy, 72 N.Y.2d 510, 534 N.Y.S.2d 658 (1988), an indictment was dismissed because a spe-cial district attorney lacked jurisdiction over the subject matter of the indictment and was not autho-rized to present the matter to the grand jury. The problem was created because the defendant was not one of the five specifically named persons, and thus part of the "particular case" in the appointing order under §701, even though the alleged crime was part of the overall incident subject to investiga-tion and prosecution by the special district attor-ney.

will be referred for possible violation of DR2-103(B), which states: "A lawyer shall not compensate or give anything of value to a person or organization to recommend or secure his employment by a client, or as a reward for having made a recommendation resulting in his employment by a client. . .."

3. The behavior of Robert Kearon in preparing false and misleading affidavits in the Skorupski case (see Chapter VI(C)) will be referred for possible violation of DR7-102(A)(6), which states: "In his representation of a client, a lawyer shall not . . . participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false."

G. Personnel

The Suffolk Police Commissioner should review the actions of Robert Kearon, Assistant Deputy Commissioner for Legal Affairs of the Suffolk County Police Department, relating to the preparation of the false and misleading affidavits in the Skorupski case to determine if disciplinary action against Kearon is warranted. (See Chapter VI(C) and also Recommendations, F(3).)

-191-

## APPENDIX A

### RESISTANCE AND LITIGATION IN SUFFOLK INVESTIGATION

During the Commission's investigation, the cooperation received from the Suffolk County Police Department and District Attorney's Office has undergone a complete reversal with respect to each agency. In the early part of the investigation, with only a few exceptions, the District Attorney's Office provided documents and cooperated in the Commission's inquiry. However, the District Attorney started to resist the Commission's investigation at the time of the request for the appointment of a special district attorney in the <u>Gallagher</u> matter, and greatly intensified his resistance at the time of the Commission's second public hearing, in January 1988, which dealt with illegal wiretapping and narcotics prosecutions.

In addition, the District Attorney's Narcotics Bureau Chief, Raymond Perini, refused to testify voluntarily at a private hearing and unsuccessfully moved to quash a Commission subpoena (<u>see</u> <u>In the Matter of a Subpoena of the State Investigation Commission Returnable January 8, 1988</u> (Supreme Court, Suffolk County, Justice McInerney, written decision 1/12/88)). Later, the District Attorney's Office began a broad-scale, but meritless and ultimately unsuccessful, legal

-192-

action to block the public release of the Commission's
final Report and otherwise attack the Commission's
investigation (see Henry v. New York State Commission
of Investigation, 535 N.Y.S.2d 859 (Supreme Court, Suf-
folk County, 1988), in which Justice Mullen dismissed
Henry's petition on June 20, 1988). The District
Attorney also appealed this case to the Appellate Divi-
sion, Second Department, and lost (143 A.D.2d 914, 533
N.Y.S.2d 690), further wasting taxpayer money and dem-
onstrating his intransigence, rather than attempting to
correct the serious problems which have been so clearly
demonstrated to exist in the District Attorney's
Office.

In contrast, the County of Suffolk initially
fought the Commission's investigation. Early in the
investigation, then County Attorney, Martin Bradley
Ashare, and the Police Department initiated a lawsuit
to block the Commission from obtaining key records (see
Suffolk County v. Commission of Investigation, Index
No. 86-2073 (Supreme Court, Suffolk County, Justice
McInerney, decision 3/17/86)). However, after the Com-
mission won this litigation, and after a barrage of
publicity unfavorable to the Suffolk Police Department
appeared in Newsday, the posture of the County and the
Police Department began to change to one of increased

-193-

cooperation. While there was resistance on one addi-
tional matter when the County represented a former Suf-
folk assistant county attorney who moved to quash a
Commission subpoena for his testimony, after the County
lost in federal court (see Skorupski v. County of Suf-
folk, CV-86-0219 (E.D.N.Y., 5/29/87, Judge Bartels)), as
well as in State Supreme Court (see Catterson v. Com-
mission of Investigation, Index No. 87-10717 (Supreme
Court, Suffolk County, Justice McInerney, 6/25/87)),
and the Appellate Division, the County's resistance
subsided.

In addition to the failures of cooperation
and resort to litigation by the County and District
Attorney, the principal resistance to the Commission's
investigation has come from the Suffolk police unions,
including the Patrolmen's Benevolent Association, and
both the Detectives' and the Superior Officers' Associ-
ations. All legal attempts by these groups to block
the Commission's investigation were also unsuccessful
(see Suffolk County Patrolmen's Benevolent Association
v. Commission of Investigation, Index No. 86-5180 (Su-
preme Court, Suffolk County, Justice McInerney); Suf-
folk County Detectives' Assn. v. Comm. of Invest., In-
dex No. 86-2072 (Supreme Court, Suffolk County, Justice
McInerney, 3/17/86); Suffolk County Superior Officers'

-194-

Assn. v. Suffolk County Police Dept. and Comm. of
Invest., Index No. 15792 (Supreme Court, Suffolk
County, Justice McInerney, 8/29/86)).

Finally, the Commission's Suffolk investiga-
tion was also subject to judicial review in another 11
separate proceedings, in each of which the Commission
achieved favorable results. Three motions to quash
Commission subpoenas have either been denied by the
courts or withdrawn (see Anonymous v. Comm. of Invest.,
Index No. 86-19048 (Supreme Court, Suffolk County, Jus-
tice McInerney, 10/27/86); Halverson v. Commission of
Investigation, Index No. 86-15104 (Supreme Court, Suf-
folk County, Justice McInerney); Kevins v. Comm. of
Invest., Index No. 88-1060 (Supreme Court, Suffolk
County, Justice McInerney, withdrawn 2/4/88)).

In addition, three Commission motions to com-
pel attendance at hearings were successful or were ren-
dered moot by reason of the appearance of the witness:
Commission of Investigation v. Weber, Index No.
40424/86 (Supreme Court, New York County, Justice
Stecher, 3/11/86); Commission of Investigation v.
Illari, Index No. 42100/87 (Supreme Court, New York
County, Justice Stecher, 6/9/87); Commission of Inves-
tigation v. Keahon, Index No. 46183/86 (Supreme Court,
New York County, Justice Stecher, 10/16/86).

Four other motions by the Commission were also successful: In the Matter of the Application of the Commission of Investigation to Authorize the Disclosure of Eavesdropping Warrants, Applications and Recordings Pursuant to Criminal Procedure Law Article 700 (Supreme Court, Suffolk County, Justice McInerney, 8/15/86); In the Matter of the Application of the State Commission of Investigation [In re Pistone] (Supreme Court, Suffolk County, Justice McInerney, 1/21/87); In the Matter of the Application of the Commission of Investigation [In re Hansen] (Supreme Court, Suffolk County, Justice McInerney, 1/21/87); and In the Matter of the Application of the Commission of Investigation [In re Criscuolo] (Supreme Court, Suffolk County, Justice McInerney, 1/29/87).

Finally, the Commission filed an amicus curiae brief in the Appellate Division, Second Department, in the successful appeal by Special District Attorney Scaring in the case of People v. Gallagher, 533 N.Y.S. 2d 554 (1988), which resulted in reinstatement of the Gallagher/Sinram indictment, which had been dismissed by Justice Kenneth Rohl (140 Misc.2d 281, 531 N.Y.S.2d 970 (Supreme Court, Suffolk County, 1988)).

APPENDIX B

DRAFT LEGISLATION, COUNTY LAW §701

§701 Special district attorney

1. Whenever the district attorney of any
county and his assistant, if he has one, shall not be
in attendance at a term of any court of record, which
he is by law required to attend, or is disqualified
from acting in a particular case to discharge his
duties at a term of any court, an attorney at law may
be appointed, as provided herein, to act as special
district attorney during the absence, inability or dis-
qualification of the district attorney and his assis-
tant. Where such appointment is required because of the
absence or inability of the district attorney and his
assistant, the appointment of the special district
attorney shall be made by a superior criminal court in
the county wherein the action is triable and shall not
be made for a period beyond the adjournment of the term
at which made; the attorney so appointed shall be an
attorney having an office in or residing in said
county. Where an appointment is required under this
section for a particular case because of the disquali-
fication of the district attorney, the appointment of
the special district attorney shall be made by the

-197-

presiding justice of the Appellate Division of the Supreme Court for the department which includes the county wherein the action is triable and may be made for all purposes, including disposition; a special district attorney required to be appointed because of the disqualification of the district attorney need not have an office in or reside in said county.

2. A special district attorney appointed pursuant to this section shall possess the powers and discharge the duties of the district attorney during the period for which he shall be appointed. The board of supervisors or other governing body of the county shall pay the necessary disbursements of, and reasonable compensation for, the services of the person so appointed and acting, as certified by the court or justice appointing said special district attorney. Upon application of the special district attorney, or on the court's own motion, a court or justice appointing a special district attorney pursuant to this section may, by order, authorize the appointee, for the purposes of carrying out the duties of the office of special district attorney, to hire assistant special district attorneys and other employees, on such terms and in such number as the court or justice may authorize, the expense of which shall likewise be a county charge.

-198-

The appointing court or justice may remove a special district attorney only for good cause, upon notice to the appointee of the cause for his proposed removal.

      3.   The provisions of this section shall also apply to a county wholly contained within a city.