# Exhibit 18

I, **ROBERT GOTTLIEB**, hereby declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following statements are true and correct:

1. My name is Robert C. Gottlieb. I am the founder and managing partner of Gottlieb & Gordon LLP.

2. Beginning in September 1988 through his trial in 1990, I represented Martin Tankleff in connection with the criminal charges against him for the murders of his parents, Arlene and Seymour Tankleff.

3. It was my understanding in 1988, 1989, and 1990, that although the Office of the Suffolk County Medical Examiner was supposed to be independent from the Suffolk County District Attorney's Office, in practice this was not the case.

4. Specifically, I understood in 1988, 1989, and 1990 that had I contacted the Medical Examiner's Office to ask questions about their findings in the Tankleff case, the Medical Examiner working on the case would not have agreed to speak with me, but instead would have instructed me to direct my questions to the prosecutor on the case. Had I done so, I understood that the prosecutor would simply have referred me to the Medical Examiner's reports, which I already had in my possession. This understanding was based on nearly a decade of experience trying felony cases as a criminal defense lawyer in Suffolk County.

5. My strategy at trial was to attack both the reliability of the confession attributed to Martin Tankleff, and the police's investigation. For this reason, the evidence that the watermelon knife was not one of the murder weapons, as the confession described, was critically important to Mr. Tankleff's defense at trial.

6. Had I known that Dr. Adams, the Medical Examiner who performed the autopsy on Arlene Tankleff, had determined that there was no reasonable possibility the knife known as the "watermelon knife" was used to inflict Arlene Tankleff's wounds, Dr. Adams would have become my key witness on that point. I would have spent a significant amount of time bringing out before the jury that the County's own expert had concluded that a critical detail in the confession—one of the murder weapons—was false.

7. Based on my approximately forty years experience trying felony cases for both the prosecution and the defense, favorable defense testimony is uniquely powerful when it comes from a government witness.

8. Furthermore, I would have used the fact that the Medical Examiner had reported to the police the day after the murders that, contrary to the confession, the watermelon knife was not the murder weapon, to attack the integrity of the entire police investigation.

9. In his opening statement, the trial prosecutor indicated to the jury that Dr. Adams would testify that Arlene Tankleff's wounds were consistent with the watermelon knife. A very basic principle of trial advocacy is that you do not ask a question to which you expect to receive an unfavorable answer. Therefore, although I was free to ask Dr. Adams on the stand whether there was any reasonable possibility that the watermelon knife was used to attack Arlene Tankleff, I never would have done so because, based on opening statements and conferences with the prosecutor, I had learned nothing to suggest that I would receive an answer favorable to the defense and I did not want to open the door to harmful testimony.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 17, 2015
New York, New York

By: _____
Robert C. Gottlieb